## ROLAND *v.* LINDSEY.

### Opinion delivered April 1, 1912.

1.  CONTRACTS—ACTION FOR BREACH—COMPLAINT.—A complaint in an action for breach of a building contract which states that the defendant contractors failed to complete the building and abandoned same "without cause or excuse" is not defective, because it fails in express terms to allege that plaintiffs complied with the contract. (Page 54.)

2.  MECHANICS' LIEN—COMPLETION BY OWNER—RECOVERY ON CONTRACTOR'S BOND.—The owner of a building who has been compelled to finish same after its abandonment by the contractors and has paid lien claims thereon will be entitled to recover on the contractor's bond an amount equal to the amount of the aggregate of the lien claims paid multiplied by the *pro rata* percentage of each lien for which the owner was liable, deducting therefrom all sums already paid to the lien claimants. (Page 55.)

3.  SAME—WHO MAY SUE ON CONTRACTORS' BOND.—Where a contractors' bond was conditioned upon performance of the contract and completion of the building free from mechanics' liens, and recited that the bond was made for the benefit of all who might become entitled to liens under the contract, the owners were entitled to recover on the bond for the amount of lien claims paid by them after the contractors had abandoned the work. (Page 56.)

4.  PRINCIPAL AND SURETY—DISCHARGE OF SURETIES.—Where a building contract provided that the owner should maintain insurance on the building as it progressed, his failure to do so, where no loss resulted from fire, did not discharge sureties on the contractors' bond. (Page 57.)

5.  MECHANICS' LIEN—WHO MAY ENFORCE.—A surety on a contractors' bond, which provided that the contractors should complete the building free of mechanics' liens, can not enforce a mechanics' lien for materials furnished for the erection of such building. (Page 58.)

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; affirmed on remittitur.

### STATEMENT BY THE COURT.

This is a suit against the appellants to recover damages for the alleged breach of a building contract. The firm of Roland & Gray were contractors and builders, and the other appellants were their bondsmen.

The plaintiffs entered into a contract with Roland & Gray whereby, for a consideration of $8,800, Roland & Gray agreed with plaintiffs to "provide all the material and perform all the work for the erection of a two-story brick building according to plans and specifications to be furnished by the architect."

Plaintiffs alleged that Roland & Gray failed to complete the building within the time stipulated in the contract, and that they abandoned the contract when the building was in an unfinished condition, and notified plaintiffs in writing that they would not complete the same; that there were outstanding claims for work performed and material furnished to Roland & Gray, and which they used in the construction of the building, and that these claims constituted liens against the building; that the amount of these liens is greatly in excess of the balance due Roland & Gray under the contract, and that plaintiffs were compelled to pay off these claims in order to avoid the expense incident to the enforcement of such claims as liens against their building. They alleged that the amount of these lien claims, after deducting the amount due on the contract, was $1,182.21, not including an item of $243.74 claimed by Tobin Brothers, who were sureties on the bond of Roland & Gray; that appellees were compelled, after Roland & Gray abandoned their contract, to complete the building according to the terms of the contract at a cost of $218.09 for labor and materials; that plaintiffs were damaged in the sum of $110, specified to be paid to them as liquidated damages if Roland & Gray failed to complete the building according to the terms of the contract; that by reason of the breaches of the contract on the part of Roland & Gray plaintiffs have been damaged in the sum of $1,505.30. Plaintiffs prayed that they have judgment in that sum, and also prayed

that the claim of Tobin Brothers be adjudicated, and that if same be declared a lien they be allowed to pay the same and have judgment over against the defendants for the amount thereof.

The defendants Roland & Gray filed a separate answer, in which they admitted the execution of the contract and bond. They alleged that they used their best efforts to complete the building under the contract until the 5th day of July, 1911, when plaintiffs refused to make further payments for labor, and that, being unable to complete same without further advancements, they surrendered the building to plaintiffs. They admitted that they surrendered the building to plaintiffs, who completed the same. They alleged that the building was practically completed when they abandoned it, and that it should have been completed for a sum not to exceed $150, and that if plaintiffs paid more than that it was because they added to the work and changed the plans and specifications. They alleged that plaintiffs, after taking charge of the work, took out certain molding which Roland & Gray had placed in the building, according to the contract and under the directions of the architect, and which had been accepted by him, and substituted therefor molding more costly and not included in the contract, and for which additional expense the defendants are not liable. They alleged that when they abandoned the contract there was due them on the contract price the sum of $458.50, which sum was more than sufficient to complete the building according to the contract; that plaintiffs did in fact complete it for a much smaller sum, and there was still due the defendants Roland & Gray the sum of $300. They alleged that after they abandoned the contract the amount they owed for labor and material did not concern the plaintiffs, further than to see that the claimant got his *pro rata* part of what remained of the contract price after completing the building according to the contract. They admitted that they owed bills for material and labor, but alleged that, if plaintiffs elected to pay off these claims, they did so voluntarily, and had no right to enforce same against the defendants in this action. They alleged that, while the building was not completed by the 20th day of June, 1911, (the time specified in the contract for the completion of same), they were delayed

by the unwarranted interference of plaintiffs, who procured
one Ferrell "to hang around the building and interfere with"
the men in the employment of Roland & Gray, frequently re-
quiring or demanding of them to "change, tear out and re-
place work which was being done strictly in accordance with
the contract." That such interference delayed Roland & Gray
ten days in their work. They alleged that they were also
delayed by an unprecedented rainfall, amounting to an un-
avoidable casualty. They alleged that they applied to the
architect for an extension of sixteen days on account of this,
and alleged that they were not indebted to plaintiffs in the
sum of $110 for delay in finishing the building.

They alleged that the plaintiffs committed the first breach
of the contract by buying metal ceiling for the building with-
out the knowledge or consent of the defendants; that in re-
fusing to permit or allow defendants to buy any other ceiling
plaintiffs breached their contract. They alleged that plain-
tiffs further breached their contract by failing to provide and
maintain insurance as specified in the contract.

The bondsmen, who were also defendants, filed a separate
answer, in which they admitted the execution of the contract
and the execution and delivery of the bond as alleged. They
admitted that Roland & Gray abandoned the work on July 5,
1911, and that the bondsmen were notified of such action on
the part of Roland & Gray. They alleged that they immediately
notified plaintiffs that they denied any liability whatever on
the bond, and would not complete the building. They admitted
that the plaintiffs did take charge of the building and com-
plete the same. They denied the other allegations of the
complaint. They set up that the plaintiffs breached the con-
tract with Roland & Gray, first, by paying to the contractors
Roland & Gray $8,341.50, which sum was in excess of 85 per
cent. of the contract price, and also in excess of 85 per cent.
of the value of the work done and material furnished; that
plaintiffs also breached their contract by buying metal ceiling
without the knowledge or consent of the contractors, and by
refusing to permit the contractors to buy other ceiling. They
alleged that the plaintiffs, after taking charge of the building,
instead of finishing same according to the plans and specifica-
tions, made many material changes. They removed the mould-

ing that had been put on according to the contract and substituted a more expensive moulding. They alleged other changes which it is unnecessary to set out.

They alleged that plaintiffs paid off claims amounting to $1,737.21, which could not have became liens, had plaintiffs complied with the law in such cases made and provided. They reiterated the allegations of the answer of Roland & Gray as to the interference by Terrell, and as to the failure of plaintiffs to maintain insurance according to the contract. They alleged that certain certificates of the architect as to the cost of completing the building were false and fraudulent, and also his certificate as to the extension of time was false and fraudulent in that it did not allow the contractors a sufficient number of days for the extension of time under the contract. They alleged that the payment by the plaintiffs of the claims for liens after the abandonment of the contract by Roland & Gray was voluntary, and that plaintiffs were not entitled to recover anything from the bondsmen of Roland & Gray on that account. They also alleged that there was a sufficient balance due Roland & Gray on the contract price when they abandoned the same to complete the building according to the contract, and that therefore plaintiffs were not damaged.

The defendants, J. L. Tobin and J. E. Tobin, specially answered on their part, and set up that they had an account against the plaintiffs for $343.74 for material furnished to the contractors, and which was used by them in the building, and they asked that their right to a lien therefor be adjudicated.

The contract and bond were adduced in evidence. The cause was submitted to the jury upon the evidence and the instructions, and the jury returned a verdict in favor of the appellees in the sum of $1,014. Judgment was entered against the appellants for that sum with interest, and the appellants have duly prosecuted their appeal. Appellees also prayed and were granted an appeal, and the same is duly prosecuted.

*Collins & Collins*, for appellant.

1. The demurrer to the complaint should have been sustained because there is no general or special allegation that the plaintiffs had complied with the requirements of the contract and bond. 27 L. R. A. (N. S.) 473.

2. Instruction 16 as given, and the court's oral explanation thereof, are erroneous. The law is that, in order to determine the amount any lien claimant would be entitled to recover, the entire amount of the original claim of such lien claimant should be multiplied by the *pro rata* rate, and from the product thus obtained should be subtracted all sums previously paid to such lien claimant, and the remainder will represent the amount he is entitled to recover. 138 S. W. (Ark.) 974.

3. The failure to maintain builders' insurance and to have same made payable to the contractors as their interests might appear was a breach of the contract which released the bondsmen. These bondsmen are accommodation sureties, and as such entitled to greater protection than paid sureties. 87 Wash. 429; 57 S. C. 459; 79 Ark. 523; 85 Ark. 158; 45 Neb. 535; 63 N. W. 864; 5 H. & N. 235, 29 L. J. Exch. 229; 7 H. & N. 253; 62 Ark. 348.

*James S. Steel, John C. Head* and *James D. Head,* for appellees.

1. The complaint sufficiently alleges a compliance by appellees with the contract in that it states that the abandonment by appellants was without cause or excuse. The demurrer was properly overruled.

2. Instruction 16 was merely an instruction on the amount of recovery, and, even if inaccurate, the conceded facts and undisputed proof show that, disregarding the claim for delay, there was actually due to the owners a sum in excess of the amount of the verdict on account of lien claims paid by them. No prejudice could have resulted to appellants from this instruction nor the oral explanation thereof.

3. There was no loss by fire, hence the bondsmen were not released by the failure to carry insurance. 164 Ind. 242; 72 N. E. 575; 164 Ind. 7; 72 N. E. 852.

WOOD, J., (after stating the facts). Appellees have not asked any affirmative relief on their appeal. So it will only be necessary for us to determine whether or not the judgment as against appellants should be reversed for the errors assigned.

1. It is first contended that the court erred in overruling the demurrer to the complaint. The complaint did not allege in specific terms that the plaintiffs had complied with the

terms of the contract and bond on their part, but the allegations were otherwise sufficient to raise the issue as to whether or not the appellees had duly performed the contract. The complaint alleged that the contractors had failed to complete the building in the time stipulated in the contract, and that they, without cause or excuse, abandoned the contract when the building was unfinished. If the contractors abandoned the contract before the building was finished without "cause or excuse," then appellees must have complied with the provisions of the contract to be performed by them, for if they had not it could not be alleged that the contractors had abandoned the contract without cause or excuse. A failure of the appellees to comply with the contract on their part would be cause or excuse for an abandonment of the contract on the part of Roland & Gray.

2. It is next contended that the court erred in giving instruction 16 at the request of appellees, and also erred in its oral instructions explaining the same.

In instruction number 16 and in the oral instruction explaining the same the court correctly told the jury how to find the percentage to which the lien claimant would be entitled, in accoradnce with the rule approved by this court in *Pratt* v. *Nakdimen*, 99 Ark. 263.

But the court, in this instruction and in the explanation thereof, also told the jury to multiply the percentage thus obtained by the amount of lien claims paid by the owners, and that the product would be the amount the appellees would be entitled to recover in lieu of the lien claims paid by them.

The instruction and the explanation thereof were erroneous, in so far as they told the jury that the amount the appellees would be entitled to recover in lieu of the lien claims would be the product produced by multiplying the *pro rata* percentage of each lien claimant by the amount of lien claims paid by the appellees. The instruction and the explanation thereof are erroneous in that they failed to tell the jury that from the product, obtained as above, should be subtracted all sums that had been previously paid to the lien claimants, and that the remainder would be the amount that appellees were entitled to recover. The rule approved in *Pratt* v. *Nak-*

*dimen, supra,* is that "the percentage is to be figured upon the entire amount of the original claims of the lienors, and from the *pro rata* or percentage thus obtained shall be taken the amount already paid them."

The testimony tends to show that the lien claimants would be entitled to approximately 90 per cent. of the total amount of their claims, and both appellants and appellees have based their calculations on that percentage.

Without going into detail and setting out the evidence upon which we base our conclusion, we find that, applying the above rule and figuring 90 per cent. of the total amount of claims and deducting from the product the amount of the payments already made to the lien claimants, they would have been entitled to recover the sum of $1,104.39.

Appellees, having paid off the amount of the lien claims, would be entitled to recover that amount. The pleadings and evidence show that there was, of the contract price remaining in the hands of the owners at the time of the abandonment of the contract by Roland & Gray, the sum of $458.50.

The contractors conceded that it would require the sum of $150 to finish the building. Therefore, the owners had in their hands at the time of the abandonment of the contract, to be applied on lien claims, the sum of $458.50, less $150, or the sum of $308.50. This amount, deducted from the amount of lien claims which the owners would have been entitled to recover, would leave a balance of $795.80.

The difference between this and the amount of the verdict is $218.20. It therefore occurs to us that the erroneous instruction might have resulted to the prejudice of appellants to the extent of $218.20.

There was a condition in the bond to the effect that Roland & Gray, the contractors, would carry out their contract and complete the building free of mechanics' liens, and that the bond was made for the benefit of all who might become entitled to liens under the contract. It was further conditioned that they would promptly pay and discharge all indebtedness that might be incurred by them in carrying out their contract.

Appellees therefore, under the contract and bond, were entitled to judgment against the appellants for the amount of

the lien claims which they had paid after the contractors had abandoned their contract.

3. Article 11 of the contract provides: "The owner shall, during the progress of building, maintain insurance on the same against loss by fire to the amount of three-fourths of the value of the building as it progresses, the policies to cover all work incorporated in the building and all materials furnished same in or about the premises, and to be made payable to the parties hereto as their interests may appear." It was admitted that "no insurance had been written on the building during the time the work was in progress and made payable to the parties to the contract as their interests appeared."

The appellants contend that the failure of the appellees to comply with this provision of the contract released them from liability. The court, over the objection of the appellants, instructed the jury, at the request of appellees, that "the failure to carry insurance, if any, resulted in no harm, and is no defense either for the contractors or the bondsmen."

The court also refused a prayer of appellants to the effect that the failure on the part of the appellees to maintain insurance as provided in the contract would release the appellants who executed the bond from liability.

There was no loss by fire during the progress of the building. The Supreme Court of Indiana, in passing upon this question, in *Hohn* v. *Shideler*, 164 Ind. 242, held as follows:

"Where a building contract required the owner to insure the buildings and the materials on the premises in his own name or in the name of the contractor, the proceeds of the policy in case of loss to be paid to builder or owner as their interest might appear, the owner's failure to insure was insufficient to discharge the contractor's surety; no loss having occurred which such insurance would have covered." *Schreiber* v. *Worm*, 164 Ind. 7, is to the same effect.

Inasmuch as no loss occurred by fire during the progress of the work, the bondsmen sustained no damage by a failure on the part of the appellees to provide insurance as specified in the contract. As the bondsmen sustained no injury by reason of the breach of the contract in regard to insurance, they are not entitled to be relieved from liability for breaches of the contract on the part of the principal. The appellants are

therefore not prejudiced by the rulings of the trial court on the question of insurance.

4.  J. L. Tobin and J. E. Tobin were sureties on the bond of the contractors, Roland & Gray. They had a claim for materials furnished and incorporated in the building, for over eight hundred dollars, of which they claimed that there was a balance due of $343.74. The validity of this claim as a lien against the building was put in issue by the complaint and the answer of the Tobins. The court instructed the jury that the defendants, J. L. and J. E. Tobin, were not entitled to any lien for materials furnished the contractors. This instruction was correct. The Tobins, sureties on the bond of the contractors, if not paid for the materials which they furnished the contractors, must look to the contractors. They stand in their shoes, so far as discharging their obligations is concerned.

One of the provisions of the bond which they signed was that the contractors should "carry out their contract and complete the same free of mechanics' liens; and that they (the contractors) shall duly and promptly pay and discharge all indebtedness that may be incurred by the contractors."

It is obvious therefore that the Tobins had no claim for a lien on the building for materials furnished to the contractors and for which they failed to pay. They waived all right to a lien on the building for materials furnished by them by signing the contractors' bond, requiring them to pay for such materials.

5.  Various other instructions were given and refused covering different phases of the contract and the evidence adduced by the parties. We have examined these in view of the objections urged by the appellants to the rulings of the court concerning them, but we find no reversible error in any of them.

If the appellees will, within fifteen days, remit the sum of $218.20, so as to cure the error of the court in giving the prayer of appellees numbered 16 and the error in the oral explanation thereof, as indicated, and thus remove all possibility of prejudice to the appellants by reason of such errors, the judgment will be affirmed; otherwise it will be reversed and remanded for a new trial.