# HUBBARD v. REILLY.

[No. 7,663. Filed June 21, 1912.]

1. APPEAL.—*Presenting Question for Review.—Ruling on Demur-
rer.*—Where a demurrer to a complaint is overruled and excep-
tions saved, but such ruling is not assigned as error, no question
thereon is presented for review. p. 21.

2. PRINCIPAL AND SURETY.—*Release of Surety.—Alteration of Instrument.*—A material alteration of the terms of a surety bond, made without the surety's consent, will serve to release him, although such alteration is not in writing and may be to his benefit. p. 24.

3. PRINCIPAL AND SURETY.—*Action on Bond.—Liability of Surety. —Scope.*—The plaintiff in an action against the surety on a bond can impose on such surety only those burdens which are within the terms and provisions of the bond. p. 25.

4. APPEAL. — *Assignment of Errors. — Complaint. — Sufficiency.* — Where a complaint is attacked by an assignment of error presenting the question of its sufficiency, and not the error on the ruling on the demurrer, it will be held good if it states facts sufficient to bar another action for the same cause, and if there is not a total failure to state some essential element of the right of recovery. p. 25.

5. PRINCIPAL AND SURETY.—*Action on Contractor's Bond.—Evidence.—Sufficiency.*—In an action against the surety on the bond of a building contractor, where there was no evidence showing that plaintiff finished the building according to the contract after undertaking to do so, nor that the excess paid for labor and material was for such as was required by the contract, and the evidence showed that both before and after plaintiff undertook the completion of the building plaintiff himself paid for material and labor to various persons and on numerous occasions contrary to the provisions of the bond, which required all payments to be made through the surety, and that plaintiff demanded a surrender of the contract long before the expiration of the time limited for the completion of the building, the evidence was insufficient to show any liability against the surety. pp. 25, 26, 28.

6. PRINCIPAL AND SURETY.—*Contractor's Bond.—Payments by Obligee.*—Payments by the obligee in a contractor's bond should be made only according to the terms of the contract. p. 26.

7. PRINCIPAL AND SURETY.—*Contractor's Bond.—Release of Surety. —*Where, long before the time for the completion of a building had expired, plaintiff demanded the contract and voluntarily took it off the contractor's hands, such conduct, unexplained, operated to discharge the surety on the contractor's bond. p. 28.

From Superior Court of Marion County (72,889); *Clarence E. Weir*, Judge.

Action by Maurice F. Reilly against Walter J. Hubbard. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Charles B. Clarke, Walter C. Clarke* and *E. E. McFerren,* for appellant.

*Elmer Wetzel,* for appellee.

HOTTEL, C. J.—Action on a contractor's bond. On July 31, 1906, appellee entered into a written contract with the firm of Phelan & Moore, contractors, for the erection of a dwelling-house. To secure the faithful performance of such a contract a bond was given, with appellant as surety.

Appellee brought this action against appellant alone as surety on said bond. There was a judgment in favor of appellee for $566.13 and $50 attorney's fees, and from this judgment this appeal is prosecuted.

The issues of fact were presented by a complaint in one paragraph and a general denial. A demurrer to the complaint for defect of parties and want of facts was overruled and exceptions saved, but the ruling on that branch of the demurrer challenging the sufficiency of the complaint for want of facts is not assigned as error, and is not, therefore, presented to this court for review. There is, however, an assignment of error, that the complaint does not state facts sufficient to constitute a cause of action against appellant, and in order that this question, as well as others herein discussed, may be understood, we set out the substance of that part of the complaint, bond and contract involved in such discussion.

The complaint, after averring the execution of the contract, bond and specifications, and setting out the same, avers, in substance, that appellee complied with all the terms of said contract *"except as herein otherwise set forth,"* and that Phelan & Moore failed and refused to comply with the same. It is then averred that long before the house was completed, Moore left the work and Phelan refused to proceed; that appellant was notified in writing of said failure, and refused to finish the building for his principals; that appellee, after said request of appellant, *"in order to save said*

building from total destruction, was forced to and did employ carpenters to finish the work left undone'' by the principals and appellant; that appellant knew the conditions of said building contract, but paid no attention to the work; that appellee paid out the money stipulated in said contract to be paid for said building, and in addition thereto ''nearly $600,'' which said last payments were made necessary by reason of the filing of the several liens against said property.

The contract referred to provides that for the consideration named, Phelan & Moore ''contract, covenant and agree to do and perform all the work in the best and most skilful and faithful manner and to furnish and provide all the material for the erection and building of a dwelling house erected upon * * * . The party of the first part, may, at any time during the progress of said building, make any alterations in the plans, material or the erection of the work, and the same shall in no way effect or make void this contract, but the costs of the same will be deducted or added from the amount to be paid under this contract as the case may be.'' Provision is also made for payment by the second parties of all artisans, laborers and material, and to save harmless and indemnify first party on account of liens for the same, which provision is in effect the same as that in the bond hereinafter set out. It is further provided that in case second party fails to erect said building in the manner and at the time named, first party, by giving second party three days' written notice, can ''put as many men at work on said building and furnish such materials as he may think fit, at the expense'' of second party, and complete such building. For the faithful performance of the contract first party was to pay $1,833.80, in the manner set out, reserving twenty-five per cent thereof until completion and acceptance of the work, at which time said reserved sum was to be paid. ''Provided, the terms of this contract are complied with, and the wages of artisans and laborers and all persons holding

or claiming demands against said building, or the ground upon which it is built, are paid, satisfied and discharged so that there can be no liens or claims upon the building for work or for materials used in fulfilling this contract.''

Said bond provides as follows: ''That, whereas the said Phelan and Moore have entered into an agreement of even date herewith, which agreement is referred to and made a part of this bond with the said Maurice Reilly to do and complete a dwelling house according to the plans, conditions and stipulations in such agreement contained and such changes as may be made therein. * * * Now should the aforesaid Phelan and Moore do and complete the said work as aforesaid, and protect and save the said Maurice Reilly and the Celtic Savings and Loan Assn. No. 3 or either of them harmless and indemnify them or either of them against any and all loss, costs and attorneys' fees or other expenses of whatsoever nature, caused by any lien or liens or claims of any kind for labor or materials which may be created upon said building or the real estate upon which it is built by any subcontractor, laborer, artisan, person or persons furnishing materials therefor, then this obligation to be null and void; otherwise to be and remain in full force and effect. This obligation shall not be affected by any changes made in the materials, plans, execution or in the terms of said agreement. Money to be paid through bondsman.''

It will be observed that the complaint contains a general averment that the appellee performed all the conditions of said contract *"except as herein otherwise set forth."* The exceptions referred to are not specifically mentioned as such, and are not certainly or definitely set out, so that, the conditions of the contract, performed and unperformed, are, by the averments of the complaint, left in doubt and uncertainty.

The averments that follow the above-quoted statement would indicate that the exception referred to related to the performance by appellee of that part of the contract to be

performed by Phelan & Moore, in that appellee was required to finish and complete the building begun by them. In this connection there is no averment by appellee that he finished or completed the work according to the terms of the contract, or that the amount which he was required to pay in excess of the contract price was in fact paid for material necessary to complete the building according to the terms of the contract. The contract price for the building was $1,833.80, and appellee alleges that he paid $568.50 and $100 attorneys' fees in excess of this amount. These averments might all be true without creating any liability on said bond, because there was an express provision in the bond and contract for changes and alterations both in plans and material, and that the same should in "no way affect or make void the contract, but the costs of the same will be deducted or added from the amount to be paid under this contract."

Appellee, so far as the allegations of his complaint show, may have so changed or altered the plans or material that entered into the building as to necessitate the excess payment, thereby making such payment, under the express terms of the contract, a proper addition to the contract price, for which appellant could not be held liable under the bond sued on.

The bond provided that the contract price of the building should be paid "through the bondsman." The complaint shows that this provison was violated, in that appellee himself paid Moore, the contractor, and laborers and materialmen, and averments are made attempting to show reason and excuse for this violation of the terms of the bond, the sufficiency of which would be open to serious doubt on attack by demurrer.

A material alteration of the terms of a surety bond, made without the surety's consent, will serve to release the surety, even though such alteration may be to his benefit.

2. *Weir Plow Co.* v. *Walmsley* (1887); 110 Ind. 242, 246, 11 N. E. 232; 32 Cyc. 177; *Foster* v. *Gaston*

(1890), 123 Ind. 96, 104, 23 N. E. 1092; *Guthrie* v. *Carpenter* (1904), 162 Ind. 417, 70 N. E. 486.

To effect a release of the surety, it is not necessary that such alteration be in writing. *Guthrie* v. *Carpenter, supra,* 421; *Phillbrook* v. *Emswiler* (1884), 92 Ind. 590; *Foster* v. *Gaston, supra,* 104.

The plaintiff in an action against the surety on a bond can impose on such surety only those burdens which are within the terms and provisions of the bond. *City of Lafayette* v. *James* (1883), 92 Ind. 240, 243, 47 Am. Rep. 140; *Warrum* v. *Derry* (1896), 14 Ind. App. 442, 444, 42 N. E. 1123; *Dunlap* v. *Eden* (1896), 15 Ind. App. 575, 580, 44 N. E. 560; 32 Cyc. 73.

If the ruling of the court below on the demurrer to the complaint for want of facts was before us, we would hesitate to say that the court did not err in overruling the same. But the attack here made against the complaint, being under an assignment which presents its sufficiency to this court, and not the error on the ruling on the demurrer, a much more liberal rule of construction obtains. Against the character of attack here made the complaint will be held good, if it states facts sufficient to bar another suit for the same cause of action, and if there be not a total failure to state some essential element of the right of recovery. *Oliver Typewriter Co.* v. *Vance* (1911), 48 Ind. App. 21, 95 N. E. 327, and cases cited. The complaint under these holdings is probably sufficient as against the attack here made on it.

The overruling of the motion for new trial is also assigned as error. In determining the sufficiency of the evidence, we find the same omission and infirmities discussed in connection with the complaint, and others more serious.

There is no evidence that appellee, after undertaking to finish his building, in fact finished it according to the terms of the contract, or that the labor and material which entered into the same was in fact such

labor and material only as was required by the terms of the contract. There was no evidence showing that the entire excess paid over the contract price was for material and labor required in said building under the terms of said contract.

The averments of the complaint were that the excess payments made by appellee "were made necessary by reason of the filing of several mechanics' liens". We find no evidence of any lien filed, and, in fact, as to some of the items which necessarily entered into the judgment, there was no proof that the material constituting the same went into the building covered by the contract.

The evidence shows that appellee paid the contractor Moore, and for practically all the material and labor; that none of it was paid through the surety on the bond; that these payments were made to various persons and on numerous occasions, both before and after appellee undertook the completion of the building. As tending to excuse failure to pay through the bondsman, as the contract provided, appellee testified that he made two trips to find appellant, and failing to find him made the payment himself. Numerous payments were afterwards made by appellee with no further effort to locate appellant, and with no offer to pay through him. "The obligee in a bond should retain money and pay it out only according to the terms of the contract." *Foster* v. *Gaston, supra; Guthrie* v. *Carpenter, supra.*

Appellee's testimony on the subject of Phelan & Moore's failure to complete the building was, in substance, as follows: Phelan & Moore did not complete the work. A man by the name of Davis, hired by appellee, completed it. Moore paid for some of the work and quit the job and left Phelan there, and he refused to handle the money and made appellee pay the bills. Moore worked on the job over two weeks, and Phelan worked about four weeks longer.

It will be observed that appellee in his statement attempts

no explanation why Phelan & Moore quit the work. There is no statement that they refused to proceed with the work. The contractor Moore in his examination when offered by appellee testified, in substance, that he worked on the job three weeks, and was "overcome with the heat", and while sick, Reilly came to his house and demanded the contract, and he surrendered it to him. Moore, when introduced by appellant, testified as follows: "I was on the job about three weeks. The house was enclosed when I quit. I got overcome with the heat and while I was at home sick, Mr. Reilly came to my house and demanded the contract for the building and I turned it over to him. I suppose I would have gone back and finished the house if he had not told me he wanted the contract. I turned over the contract and papers, receipts I had there to Mr. Reilly." When asked to detail just what was said on that occasion, Mr. Moore said: "He come to my house and said he wanted the contract and receipts, and that he would do it himself, and I gave him the receipts and surrendered the contract to him. He told me the contract was terminated. I never went over the bills afterward and don't know what went on after that day."

The evidence discloses that this conversation occurred sometime in August, 1906. The contract contained a provision for the completion of the house by October 1, 1906, and for a forfeiture of an amount, left blank, for each day's delay thereafter, as liquidated damages. Mr. Hubbard testified that he was out of the city of Indianapolis on his vacation from two to three weeks in August, and got back before September 1, and was here continuously after that time. The other contractor, Mr. Phelan, was deceased at the time of trial, and no explanation for his failure to finish the job is offered by either appellant or appellee, except the statement of some witness that Phelan told him that he was discharged, which, it seems from the record, was afterwards stricken out.

The statement of Moore was not denied by appellee. There is nothing inconsistent between appellee's statement that Moore quit the work, and Moore's own statement that he quit because of becoming overheated, and that afterwards appellee demanded a surrender of the contract, long before the time for completion expired, and with no excuse or explanation offered for such demand. So far as the evidence shows, the principal Moore was willing to go ahead and finish his contract, but appellee, when Moore was sick, demanded the contract, and voluntarily took it off his hands. Such conduct on appellee's part, unexplained, would, under the law, operate to discharge the surety.

A careful examination of the evidence in this case leads us to the conclusion that under the authorities herein cited, it is clearly insufficient in several essential elements necessary to show a liability against the surety on the bond sued on, and that the motion for new trial should have been granted. For this reason the judgment is reversed, with instructions to the court below to grant a new trial, with leave to appellee to amend his complaint, and for any other proceedings consistent with this opinion.

NOTE.—Reported in 98 N. E. 886. See, also, under (1) 2 Cyc. 982; (3) 32 Cyc. 109; (4) 31 Cyc. 82; (5) 32 Cyc. 138; (6) 32 Cyc. 189. As to release of surety by material alteration of instrument after signing, see 28 Am. St. 215.