MATCHETT *v.* THE WINONA ASSEMBLY AND SUMMER SCHOOL ASSOCIATION ET AL.

[No. 22,882. Filed June 23, 1916.]

1. PRINCIPAL AND SURETY.—*Promissory Note.*—*Extension of Time.* —*Release of Sureties.*—An agreement between the creditor and principal debtor extending the time for payment of a promissory note discharges the sureties from liability. p. 132.

2. BILLS AND NOTES.—*Promissory Note.*—*Payment of Interest in Advance.*—*Implied Extension of Time.*—The payment of interest in advance on a past-due promissory note has the legal effect of extending the time of payment of the principal debt to the date to which the interest is paid, and that there was an agreement to

extend the time of payment need not be alleged or proved in such a case, since it is implied as a matter of law from the mere payment of the interest in advance.   p. 133.

3.  BILLS AND NOTES.—*Promissory Note.*—*Payment of Interest in Advance.*—*Rights of Sureties.*—Where interest on a past-due promissory note was knowingly paid in advance for a certain period, the right of the principal debtor to sue during such period was suspended, in the absence of a contrary agreement, and during that time the sureties were deprived of the right of paying the note and bringing suit against the principal.   p. 134.

4.  PRINCIPAL AND SURETY.—*Contract of Suretyship.*—*Construction.* —*Rule of Strictissimi Juris.*—The rule of *strictissimi juris*, which is applied in favor of one signing as surety for accommodation and without compensation, but which cannot be invoked for the benefit of a surety company in construing their contract of suretyship, should be applied in favor of a stockholder of a corporation not conducted for profit who becomes surety therefor, even though the rule might not apply in such a case if the corporation were one operated for profit.   p. 135.

5.  PRINCIPAL AND SURETY.—*Discharge of Surety.*—*Promise to Pay after Release.*—*Effect.*—If, after a surety has been discharged by an extension of time given the principal to make payment, he, with full knowledge of the facts but without any new consideration, promises to pay the debt, he will remain liable therefor.   p. 138.

6.  PRINCIPAL AND SURETY.—*Discharge of Surety.*—*Promise to Pay after Release.*—*Evidence.*—Statements made by the surety to a payee of a promissory note that he desired time to consult with his cosureties and the principal and expressing a hope that there would be some satisfactory arrangement made in regard to the note, saying that he would do what he could to bring the matter to such a conclusion, do not amount to a promise to pay the debt after he has been discharged by an extension of time given to the principal.   p. 138.

From Kosciusko Circuit Court; *Francis E. Bowser*, Judge.

Action by James H. Matchett against The Winona Assembly and Summer School Association and John F. Beyer and others as sureties.   From a judgment for plaintiff against the party first named and in favor of the sureties, the plaintiff appeals. *Affirmed.*

*H. W. Graham, Anthony Deahl* and *L. W. Royse*, for appellant.

*John W. Widaman, Allen S. Widaman, William F. McNagny, Rob R. McNagny* and *Phil M. McNagny,* for appellees.

LAIRY, J.—The judgment from which this appeal is taken was based upon a promissory note executed by appellees and payable to appellant. The trial court rendered judgment in favor of appellant for the sum of $12,592 as against the Winona Assembly and Summer School Association and against appellant, and in favor of appellees John F. Beyer, Christian C. Beyer and J. Edward Beyer for costs. Upon proper request the court found the facts specially and pronounced its conclusions of law thereon. The questions here presented arise upon the exceptions to the conclusions of law.

As shown by the findings of fact, the note in suit was executed November 6, 1908, by the Winona Assembly and Summer School Association, as principal, and the other three appellees, as sureties, and that appellant knew at the time the note was executed that the three last-named appellees were sureties for the principal maker of the note. The note was for the principal sum of $9,000 due sixty days after date with interest after maturity at the rate of eight per cent. per annum. The interest to maturity was paid in advance and by the terms of the note it fell due on January 5, 1909. The note was not paid at maturity and interest was paid from time to time by the principal maker. The first three payments, aggregating $360, paid the interest to July 5, 1909, but by none of these payments was the interest paid in advance of the time it was fully earned. After the payment which discharged the interest to July 5, 1909, no further payment was made until January 1, 1910, on which

date the principal maker paid to appellant by check $360, as interest on the note in suit for six months to January 5, 1910, and the following endorsement was made on the back of the note: "Interest 12-31 paid on this note to Jan. 5th, 1910, $360." The court's finding No. 6 is as follows: "That at neither of the times when said payments were so made on said note was there any request made by the said principal on said note for any extension of the time of its payment, nor were either of said payments made under any agreement and understanding by and between the plaintiff and said principal, that in consideration thereof the time for the payment of said note should be extended, except such agreement as would be implied therefrom, and that each and all of said payments were made without anything said by said principal or said plaintiff about the extension of the time of the payment of said note." The court further finds that all of such payments were made and endorsed on the note without the knowledge of the sureties.

As a matter of law the court concluded that appellant was entitled to recover on the note as against the principal maker, but that he was not entitled to recover as against the sureties, and that they were entitled to recover their costs.

It appears from the special finding that the payment of $360 as interest on January 1, 1910, paid the interest on the principal until January 5, 1910, which was four days, at least, in advance of such payment. There is no controversy as to the law governing the case, if, in connection with the other facts shown in the special finding, it is also *found as a fact* that there was an agreement between appellant and the principal debtor extending the

time for the payment of the note. All parties concede that the law applicable to the facts 1. shown by the special finding released the sureties if it is properly found *as a fact* that the time of payment was extended by agreement between the creditor and the principal debtor. Such is undoubtedly the law. *Williams* v. *Scott* (1882), 83 Ind. 405; *Post, Admr.* v. *Losey* (1887), 111 Ind. 74, 12 N. E. 121, 60 Am. Rep. 677.

Appellant asserts that the finding does not show that there was any agreement between him and the principal debtor to extend the time for the payment of the note to January 5, 1910, at the time interest was paid to that date on the first day of that month, and that finding No. 6 shows that there was no express agreement to that effect. It is the position of appellant that, in order to constitute such an agreement, both parties must have understood that, in consideration of the payment of interest in advance, the time for the payment of the principal debt was extended until the date to which interest was paid, and that their minds must have met and agreed upon that proposition. It is further asserted that the fact of such agreement is the ultimate fact to be found and that the failure to find such ultimate fact is fatal. Appellant claims that the finding to the effect that interest was paid in advance from January 1, 1910, to the fifth day of that month is an evidentiary fact from which the ultimate fact of an agreement to extend the time for the payment of the principal debt until the latter date might be inferred, but that it does not amount to a finding of such ultimate fact. Decisions in some other states may be found to sustain appellant's position. *Haydenville Sav. Bank* v. *Parsons* (1884), 138 Mass. 53; *Nat. Bank, etc.* v. *Love* (1895), 62 Mo. App. 378; *Vilas* v. *Jones* (1843),

10 Paige (N. Y.) 76; *Williams* v. *Smith* (1858), 48 Me. 135. The rule adopted in this State, however, does not sustain the position of appellant, and does not accord with that announced in the decisions cited in its support. On the contrary this court has held that the payment of interest in advance has the legal effect of extending the time for the payment of the principal debt to the date to which the interest is paid, and that such agreement need not be alleged or proved for the reason that it is implied as a matter of law from the mere payment of the interest in advance. *Hamilton* v. *Winterrowd* (1873), 43 Ind. 393; *Starret* v. *Burkhalter* (1882), 86 Ind. 439.

In the case of *Hamilton* v. *Winterrowd, supra,* the court said: "There is, to be sure, no allegation of an agreement to forbear for three months and a half, but the facts are stated from which the presumption of such an agreement arises. The doctrine of implied agreements rests on presumption. ' "Implied contracts", says Blackstone (vol. 2, p. 443), "are such as reason and justice dictate, and which, therefore, the law presumes that every man undertakes to perform." ' 1 Pars. Con., 5th Ed., p. 4. Presumptions of law, however, need not be stated in pleading. 2 G. & H. 111. It follows that under our code it is sufficient to state facts from which the law implies an agreement, without in terms averring the agreement." In each of the cases cited the question arose in the determination of the sufficiency of an averment of an answer, but the reason for the rule as stated by the court applies with equal force where the sufficiency of a special finding of fact is in question. In other cases this court approved the same proposition of law embodied in instructions. *Wood-*

*burn* v. *Carter* (1875), 50 Ind. 376; *Jarvis* v. *Hyatt* (1873), 43 Ind. 163.

It may be that interest paid in advance by reason of a mutual mistake of the parties or on account of a miscalculation of the amount due as interest would not have the legal effect of extending the time for the payment of the principal debt, but the finding here shows that an endorsement was made on the note showing that on December 31, 1909, interest was paid to January 5, 1910. This clearly shows that the payment of interest in advance was not made or received by mistake. It is also apparent from the finding that there was no agreement or understanding between the principal debtor and his creditor to the effect that the latter's right to sue should not be suspended during the time for which interest was paid in advance.

3. Under such circumstances the right of the principal debtor to sue on the note was suspended from the time the interest was paid until January 5, 1910. During that time the sureties were deprived of the right of paying the note and bringing suit against the principal.

It is stated in the tenth finding that at the time the note in suit was extended, John F. Beyer, Christian C. Beyer and J. Edward Beyer were each the owner of $100 of the capital stock of the Winona Assembly and Summer School Association, and that John F. Beyer was at that time a member of the board of directors of that corporation. It further appears from this finding that the money borrowed on the note was used for the benefit of the corporation, and that there was no change in the financial responsibility of the principal maker of the note between December 31, 1909, and January 5, 1910. On behalf of appellants it is claimed that the facts thus stated takes the sureties in this

case out of the class in whose favor the rule of *strictissimi juris* is applied and places them in a class of sureties which cannot invoke that rule in their favor for the reason that they have a beneficial interest in the contract upon which they are sureties.

4. The trend of modern authority is to distinguish between contracts of suretyship entered into by individuals through friendship or other similar motives, and like contracts made by corporations organized for the express purpose of acting as surety for a consideration. The rule of *strictissimi juris* is applied to the former, but not to the latter. *Young* v. *American Bonding Co.* (1910), 228 Pa. 373, 77 Atl. 623; *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372.

Appellants assert that the same rule should be applied to the contract of an individual who is surety of a corporation of which he is a stockholder that is applied to the contracts of surety companies whose business it is to act as surety for a compensation. It must be borne in mind, however, that the business of these corporations closely resembles that of insurance, and their contracts are treated and construed as contracts of indemnity, rather than suretyship. *Atlantic, etc., Co.* v. *Laurinburg* (1908), 163 Fed. 690, 90 C. C. A. 274; *Philadelphia* v. *Fidelity, etc., Co.* (1911), 231 Pa. 208, 80 Atl. 62, Ann. Cas. 1912B 1085; *Boppart* v. *Illinois Surety Co.* (1909), 140 Mo. App. 675, 126 S. W. 768, Ann. Cas. 1912B, note 1087.

An examination of the cases cited will show that the reason for the rule applied to the contracts of surety companies does apply with equal force to the contract of a person who is surety for a corporation in which he owns stock. The corporation is a distinct legal entity, and the benefits which may

accrue to a stockholder from a loan of money to the corporation are indirect and incidental merely in proportion to the stock owned by him at the time of the loan.

Little authority can be found bearing directly on the question here presented. The rule has been thus stated: "As the promise of a shareholder to pay a debt of the corporation is a promise to pay the debt of another, it entitles the promisor to all the rights and remedies of a surety as to extensions and renewals of credits not authorized by him." 10 Cyc 651. The case of *Home Nat. Bank* v. *Waterman* (1890), 134 Ill. 461, 29 N. E. 503, cited to sustain the text, seems to support the rule stated, as does also the case of *Pelton* v. *San Jacinto Lumber Co.* (1896), 113 Cal. 21, 45 Pac. 12. The later case of *First National Bank, etc.* v. *Livermore* (1913), 90 Kan. 395, 133 Pac. 734, 47 L. R. A. (N. S.) 274, sustains the position of appellants holding that a principal stockholder who signs a note with a corporation intending to be bound only as surety is not entitled to the same liberality of treatment which the law accords to a volunteer surety, and that where such corporation is granted an extension of time for a consideration, the stockholder, although he did not consent to such extension, is not released unless he suffered some injury therefrom.

The principal authority cited in support of the Kansas case is that of *Richardson* v. *Draper* (1882), 87 N. Y. 337. In that case ten persons who were the principal stockholders and promoters of a business corporation jointly guaranteed bonds issued by the corporation and secured by a mortgage on its property. The court held that these guarantors did not stand in the position of volunteer sureties, and were not entitled to all of the rights and remedies

which the law accords to such. The court said; "Here the joint guarantors owned nearly the entire stock of the corporation. They, with other persons interested in the corporation, desired that it should commence the business for which it was incorporated. It may be presumed that the purpose was to make profit for the benefit of the stockholders. No benefit to the corporation as an abstract entity, apart from its stockholders, could have been contemplated.   *   *   *   Therefore, in guaranteeing the bonds the obligors did not act as mere sureties; they were seeking a benefit for themselves in promoting an enterprise in which they were largely interested. Whatever would benefit the company would benefit them. They were acting to put profits in their own pockets, and by means of the guaranty they actually obtained for their corporation the land donated and the $150,000. Under such circumstances the equities of the obligees and that attaching to the estate of the deceased obligor are not equal, that is, the equity of the estate to be discharged from liability is not so strong as the equity of the respondents to be paid out of the estate."

In this case, as in the Kansas case, it appeared that the corporation for whose debt the stockholders were surety was one engaged in conducting business for profit, and that the sureties as stockholders were largely interested in the success of the corporation. Even though the rule announced in the Kansas case may be properly applied to the facts there shown, its application certainly must be limited to the stockholders of corporations organized and conducted for business and profit, and who for that reason have a financial interest in the success of such corporation. In this case it appears from the special finding that the sureties on the note in suit each owned one share of stock of the

par value of $100 in the Winona Assembly and Summer School Association, but it does not appear that such corporation was engaged in a business enterprise conducted for the purpose of making profit for the stockholders.

Lastly it is asserted on behalf of appellant that the special finding shows an acknowledgment of liability and a promise to pay the debt by the sureties. If, after time has been given the principal such as would entitle the surety to his discharge, the surety, with full knowledge of the facts, but without any new consideration, promises to pay the debt, he will remain liable therefor. Brandt, Surety & Guaranty §381.

In this case, however, the finding fails to disclose an acknowledgment of liability and promise to pay the debt. Three letters are set out in the finding, written to the debtor by one of the sureties, in which he asked that he be given time to consult with the principal and also with his brothers, who were cosureties, and in which he expressed the hope that Dr. Dickey, who represented the principal debtor, would "get the matter in shape satisfactory to all concerned." The writer also stated in these letters that he had arranged for a meeting of the sureties and Dr. Dickey, and that he wanted to see the matter arranged some way and would do all he could to bring it about. The statements contained in these letters do not amount to a promise by the sureties to pay the debt.

The court did not err in its conclusions of law. Judgment affirmed.

Note.—Reported in 113 N. E. 1. Payment of interest in advance as consideration for the extension of the time for payment of a note, release of surety, 5 Ann. Cas. 442; 52 L. R. A. (N. S.) 353; 32 Cyc 207. Extension of time to a corporation conducted for profit as affecting liability of stockholders that sign as sureties, 47 L. R. A. (N. S.) 274.