HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.* STATE OF INDIANA, EX REL. MARTIN, DRAINAGE COMMISSIONER.

[No. 12,461. Filed December 8, 1927. Rehearing denied March 8, 1928. Transfer denied June 30, 1932.]

532

*Hume L. Sammons* and *Stuart, Simms & Stuart,* for appellant.

*Fraser & Isham* and *John A. Dunlap,* for appellee.

NICHOLS, J.—This is an action by appellee, on the relation of C. M. Martin, as commissioner of drainage in charge of the construction of a public drain established by the judgment of the Newton Circuit Court, against Walter Hygema, an alleged defaulting contractor under a contract for the construction of such ditch, and appellant as the surety upon his bond in the sum of $20,000. The bond that is the basis of the action was conditioned that, "if the said Hygema should well and truly do and perform all of the acts necessary in the construction of said drain, and construct the same by furnishing all the labor and materials, and work necessary in the construction of the same and should pay all cost of labor and materials and board for laborers and complete the same within the time specified in the contract then the obligation should be void, else to remain and be in full force and effect."

In the contract involved Hygema agreed and bound himself to pay for all materials and to pay for the board of all· laborers furnished in and about the construction of said drain. It also contained a specification that the work should remain at the risk of the contractor until its final completion and until each and every clause of the specifications should have been complied with and the work finally inspected and accepted. The amended complaint was answered by a general denial under which it was stipulated that all defenses of every kind and nature might be proved by defendants. There was a trial by jury which returned a verdict in favor of appellee for damages in the sum of $11,400. After appel-

lant's separate motion for a new trial was overruled
there was judgment against the defendant Hygema and
appellant for the amount of the verdict from which ap-
pellant prosecutes its separate appeal. We may say that
the defendant Hygema filed his separate motion for a
new trial, which was overruled, but as he does not prose-
cute an appeal we give it no further attention. Appel-
lant has assigned as error the action of the court in
overruling its separate objection to appellee's verified
motion for leave to amend its complaint; in sustaining
appellee's said verified motion for leave to amend the
complaint; in overruling appellant's motion for a new
trial; and in overruling appellant's motion to set aside
the submission and discharge the jury because of im-
proper conduct of appellee's counsel in the presence of
the jury. Under its motion for a new trial appellant
has assigned 162 reasons therefor. The record in this
case contains 1,140 pages, the briefs of appellant alone
contain 744 pages. From such voluminous record and
briefs it is difficult to make a satisfactory statement of
the facts involved within proper limits, but as we un-
derstand them from the record and briefs, they are sub-
stantially and briefly as follows: One of the peti-
tioners was the Real Estate Securities Company, from
which the ditch derived its name. The work was es-
tablished by the Newton Circuit Court as a new ditch
under §6166 *et seq.* Burns 1926, but over and along a
certain ditch theretofore constructed, known as the
Lawlor ditch which it sought to change, repair and
clean out. The main ditch was 10 miles in length with
a number of laterals thereto; it was an open ditch and
the yardage to be excavated was 159,434 cubic yards;
the fall of the ditch as appeared by the specifications was
only one foot in every 4,000 feet over much of its course,
this fall being obtained by making the ditch deeper and
deeper down stream; in times of high water, a large vol-

ume flowed through the channel which washed the sand in from the sides and tended to fill up the ditch. The contract for the construction was first let to one Charles Hahn for $19,043; this contract was entered into in May, 1917, said Hahn giving his bond in the sum of $10,000 with the London and Lancashire Indemnity Company as surety; he did little, if any, work under his contract which required completion by December 1, 1918. On January 8, 1919, the commissioner then in charge canceled Hahn's contract and reported such action to the court, which approved the annulment and directed the commissioner to re-let the contract, which was done on March 31, 1919, said Hygema being the successful bidder. Shortly prior to the date of re-letting the contract, at a conference between the construction commissioner then in charge, said defaulting contractor, Hahn, and a representative of the surety on the defaulting contractor's bond, and said Hygema, it was arranged, as appellant claims, that Hygema should make his bid in his own name but for the benefit of Hahn, that his bid should be in the amount originally bid by Hahn, that if Hygema should be the successful bidder Hahn's security company would pay the premium on Hygema's bond and advance certain moneys to further the work, and that Hahn working for Hygema and under his contract should do the construction work. The contract between the commissioner then in charge and Hygema was entered into May 8, 1919, on which date Hygema as principal and appellant as surety executed the bond in suit to secure the faithful performance by Hygema of the work to be done under his contract, the conditions of which bond are more specifically set out above. The premium on such bond was paid by that surety company which as surety had executed the Hahn bond. It is claimed by appellant that it had no knowledge of what it terms the collusive and unlawful

triangular contract made with the knowledge and assent of the construction commissioner between its principal, the former defaulting contractor Hahn, and his surety, London and Lancashire Indemnity Company.

Work under the Hygema contract began in the spring of 1919, and continued with many interruptions until in December, 1921, at which time Hygema removed his dredge boat and dredges and left the work uncompleted. He had at this time excavated 112,268 cubic yards, or more than two-thirds of the engineer's total estimate. From time to time the engineer in charge made estimates of the yardage excavated on a basis of 12 cents per cubic yard instead of 10 cents, which was the estimated cost which became the basis of the contract involved, and, after these estimates were approved by the court, warrants were drawn in Hygema's favor for 80 per cent thereof, excepting two or three instances in which the court did not allow the contractor the full 80 per cent of the estimate. The work done by Hygema was not in one continuous section, but on different parts of the ditch, while portions lying between were not excavated at all, and it is claimed that these unexcavated sections acted as a dam and held back the flow of water, thereby greatly increasing the natural fill. The contractor was very much behind with his work and did no excavating on more than two and one-half miles of it. On March 21, 1921, appellee as commissioner in charge filed with the court a report stating that, because of the substitution of materials, delay and other causes, he had annulled the Hygema contract, and the court made an order approving such annulment and directing the commissioner to re-let the contract. Thereafter on May 16, 1921, appellee as such commissioner filed a further report that Hygema had not completed the work under his contract, had removed only about one-third of the required yardage, had substituted for vitrified sewer

pipe as specified, sewer pipe of a different kind, and that there had been drawn on the contract $11,525.72, and recommended that the contract ought to be canceled. Summons was issued for and served upon Hygema and appellant was given notice by publication for two weeks, and was notified by letter sent to its office in Chicago, it being a nonresident of the state. Hygema appeared and filed answer averring that he could complete the ditch by November 11, 1921; but after Hygema had abandoned the work the court on January 3, 1922, forfeited the contract. Because of the flatness of the land, its sandy soil, the great depth of the ditch and the long delay of Hygema, much of the excavation done by him and for which he had been paid 80 per cent on estimates filled up so that it is now necessary to re-excavate and to reconstruct much of the ditch excavated by Hygema. The court determined that the value of the work done under the Hygema contract was $7,000 and appellant contends that he, Hygema, should have received but 80 per cent thereof or $5,600, while in fact he had been paid the said sum of $11,525.72. Appellant claims that there was paid out $12,975.72.

On May 6, 1922, appellee, as commissioner of construction, by order of the court and after due advertisement, relet the contract for the completion of the work according to the original plans and specifications, to one Bennema for $17,950. The Bennema contract provided that the contractor should not be required to begin work until the funds to pay for the same were made available, and as the funds were not then available and have not since become so, no work has been done under the Bennema contract. Bennema's bond provided that it should remain in force until January 1, 1924. No new bond or renewal of the original bond has ever been made or filed. It is plain that Hygema never performed his con-

tract, that the ditch was never dug according to the specifications, and it is admitted that on over two and one-half miles no work was ever done by Hygema.

Appellant, speaking generally, contends that it is not liable in this action, for the reasons: (1) That appellee's relator has committed a breach of the contract in permitting a material change thereof whereby iron and steel pipe was substituted for vitrified shell tile and concrete headers; (2) that such change was made without the knowledge or consent of appellant; (3) that payments have been made from the ditch fund on estimates computed on the basis of 12 cents per cubic yard which was in excess of the estimated cost, thereby depleting the ditch fund; (4) that overpayments were made by the payment of claims not duly certified, and by the payment of claims which were not liens upon the ditch fund, being for tires, tubes, rent, oil, food, clothing, etc., and by the payment of claims after the Hygema contract was annulled; (5) that the Hygema contract, as well as the bond upon which appellant was surety, was fraudulent and collusive in that it was made in fact, and with the knowledge of the commissioner of construction, with a former defaulting contractor, though in Hygema's name which is in violation of the statute; (6) that several thousand dollars of overpayments were made, in excess even of the gross amount of work done by the contractor, and in excess of 80 per cent of the estimated work; (7) that the Bennema contract, being uncertain and indefinite and conditioned upon there being funds available, which funds are not available and probably never will be, such contract is unenforceable and there is no legal basis for establishing a liability as against appellant, and for the further reason that Bennema's bond expired by its own limitation on January 1, 1924, and has not been renewed and no new bond

given, and there is therefore no subsisting contract with Bennema to afford any basis for the determination of liability.

Appellant first complains that the court erred in permitting appellee to amend its complaint, but such amendments are largely in the discretion of the trial court and will not be interfered with by this court unless it clearly appears that the court had abused its discretion and that the complaining party has been harmed thereby. *Lake Erie, etc., R. Co.* v. *Huffman* (1912), 177 Ind. 126, 140, 97 N. E. 434, Ann. Cas. 1914C 1272; *Frankfort, etc., Ins. Co.* v. *LaFayette Tel. Co.* (1920), 79 Ind. App. 663, 666, 129 N. E. 329.

In this case the amendment, though made after the issues were formed, was made nearly five months before the case was tried and appellants thereby had ample time to meet the issue as presented by the amended complaint. The court committed no error in this regard.

Upon the trial, it is presented that specific errors were committed in suffering amendments to the complaint, in the admission of evidence, and in the giving and refusing instructions, along with other errors specifically designated.

These specific alleged errors pertain to appellant's reasons above set out as to why it is released from all liability on the bond in suit. It is undisputed that appellant is a paid surety, and therefore it is not a favorite of the law as is a non-compensated or accommodation surety, that its contract is to be construed rather as an indemnity insurance than a suretyship, and that where there is an ambiguity, a construction will be adopted most favorable to the person intended to be protected. *Matchett* v. *Winona, etc., School Assn.* (1916), 185 Ind. 128, 113 N. E. 1; *Title*

*Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19.

But this rule is but a rule of construction, and has no application to a contract of suretyship the terms of which are certain, definite and unambiguous. *Wainright Trust Co.* v. *U. S. Fidelity, etc., Co.* (1916), 63 Ind. App. 309, 315, 114 N. E. 470; *Beech Grove Imp. Co.* v. *Title Guaranty, etc., Co.* (1912), 50 Ind. App. 377, 381, 98 N. E. 373; *Firemen's Ins. Co.* v. *Temple Laundry Co.* (1924), 195 Ind. 194, 144 N. E. 838; *Continental Casualty Co.* v. *Klinge* (1924), 82 Ind. App. 277, 144 N. E. 246.

It is appellee's contention that appellant, by the execution of Hygema's bond here in suit, as surety, thereby became a party to the proceeding, and that it was bound to take notice of the action of the court without further notice. This contention of appellee becomes important for the reason that appellee presented numerous claims to the court for allowance which were allowed in the absence of appellant, the validity of which allowances appellant here undertakes to challenge. Appellee contends that appellant is bound, as surety for Hygema, by the court's allowance of the claims, and may not here contest their validity, but we are not inclined to follow appellee to such an extreme conclusion. It is true that appellant undertook that its principal should perform his contract, and it is the law that the surety must take notice of its principal's default. *Fry* v. *Bannon Sewer Pipe Co.* (1913), 179 Ind. 309, 101 N. E. 10. To say, however, that having so obligated itself, it was thereafter, either before or after the default of its principal, required to watch the commissioner in charge to see that he did not present invalid claims for allowance would be imposing a burden on a surety, whether for hire or accommodation, which the

law does not contemplate. Appellant had a right to assume that the commissioner in charge, and the court, in the allowance of claims against the funds created for the construction of the ditch would not violate the law, and it cannot be held that appellant was bound to take notice of such violation. Appellant had a right when sued on its bond to examine into the proceeding then to determine its validity so far as its liability was concerned. Indeed it appears that appellee so understands that appellant could not be bound without some notice of a proceeding by which appellee sought to bind it, for it presents that the annulment of the contract on March 31, 1919, which was reported to and approved by the court, was invalid for the reason that Hygema did not have notice thereof, and subsequently as appears above, there was another annulment proceeding with notice to Hygema. Certainly, if such action in the ditch proceeding was invalid as to Hygema, the principal, because of want of notice to him, it can hardly be consistently contended that the allowance of claims such as here was valid in the absence of notice to appellant, the surety, so as to bind it. It was said in *Walb* v. *Eshelman* (1911), 176 Ind. 253, 94 N. E. 567, at p. 570, with reference to the annulment of a ditch contract under the statute here involved, that while under conditions named, the person charged with the construction of the work may annul the contract, this cannot be done arbitrarily, and *sua sponte,* and can only be done upon notice and a hearing. The same principle must apply for the protection of appellant. It was entitled to its day in court as to the validity of any claims the allowance and payment of which would effect its liability on its bond. Appellant had a right to stand upon the very terms of its contract of suretyship. In *Weir Plow Co.* v. *Walmsley* (1887), 110 Ind. 242, 11 N. E. 232, the court, quoting from Judge Storey, says: ' "Nothing can

be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient, that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variations of it, and a variation is made, it is fatal." ' This quotation is embodied with approval in the opinion in *Crouch & Son* v. *Parker* (1919), 188 Ind. 660, 125 N. E. 453, 7 A. L. R. 1598, where the court holds that any alteration of the contract of suretyship after the contract is made, though beneficial to the surety, has the effect to annul the contract, saying that his contract, exactly as made is the measure of his liability. The contract there involved was a private contract, and appellee contends that the principles in this regard as to such contracts are not applicable to public contracts, saying that: "These officers could not by their wrongful act prejudice the right of the landowners who are assessed to build the ditch." We understand appellee's contention to be that the officers charged with the construction of the ditch could not by the unlawful allowance and payment of claims, or other violation of the terms of the contract, prejudice the rights of the landowners. We have not the landowners directly before us in this appeal, but we have the surety on the bond, and we have to say that these public officers could not by the unlawful allowance and payment of claims, or by other violations of the contract, prejudice the rights of appellant as surety. One of the cases which appellee cites to sustain his contention that there is a distinction between public and private contracts in regard to the liability of the surety is *State, ex rel.*, v. *Lund* (1923), 80

Ind. App. 349, 356, 139 N. E. 466, but that authority, as we read it, is not helpful to appellee. The contract there involved was a public contract and the action was on the bond to recover for material and labor furnished in the prosecution of the work, and the court held that there was a right of action therefor which could not be defeated by any act done, or committed, by the parties to the construction contract, but clearly distinguished such an action from one to secure the faithful performance of the contract, saying that the bond in suit was executed for two distinct purposes: (1) To secure the faithful performance of the contract; and (2) to secure prompt payment by the contractor of all debts incurred in the prosecution of the work, further holding that with the accomplishment of the first purpose the laborers and materialmen were not concerned, and that the same might be said by the board of commissioners with reference to the accomplishment of the second purpose. In *United States Fidelity, etc., Co.* v. *American Blower Co.* (1908), 41 Ind. App. 620, 84 N. E. 555, involving a public contract, the court makes the same distinction, saying that alterations in the contract which of themselves might release the surety as to the obligee, will not affect the right of the materialmen to proceed on the bond.

In the *Lund Case,* the court states the general rule to be that, in the absence of a stipulation permitting the parties to the contract to make changes in the work to be done, a material alteration made without the consent of the surety on the contractor's bond will discharge the surety, but if the contract under which the work is to be done provides that changes therein may be made, the surety on the contractor's bond will not be discharged by reason of material changes made without his consent. In the instant case it clearly appears that the action grows out of Hygema's breach of his contract faith-

fully to perform, to maintain which appellee must show faithful performance on its part. Appellant defends by presenting that appellee did not faithfully perform in that it materially changed the contract as to the kind of material to be used, and that it violated the contract by overpayment to Hygema and by unlawfully allowing and paying claims which were not chargeable against the construction funds thereby dissipating the same to appellant's damage.

It is undisputed that there was a change in the specifications in that there was a substitution of iron or steel pipe for vitrified shale tile which was the kind provided in the specifications, and that such change was made with the concurrence of the contractor and the superintendent of construction then in charge. That by such concurrence the contractor would be estopped from defending by reason of such change cannot be questioned, but it does not follow that the surety would be so estopped, where, as here, the change was made without its knowledge and consent. That appellee's relator regarded such change as material is evidenced by the fact that when he came into office he annulled the Hygema contract which was entered into with his predecessor in office, alleging in his petition to the court as one of the grounds for such annulment, that Hygema had submitted iron pipe for vitrified sewer pipe as provided in the specifications. As we have seen above, this was with the concurrence of the relator's predecessor, superintendent then in charge. Further, when appellee's relator gave notice of the reletting of the contract so annulled for such substitution of iron pipe he expressly specified that vitrified tile should be used. There was paid out for iron pipe, which was not specified, $1,802. In *State, ex rel.,* v. *Hillis* (1919), 79 Ind. App. 599, at p. 603, 124 N. E. 515, it

was held that an impossibility of performance, or a material change in the plans and specifications which require the construction of a ditch according to plans and specifications clearly different from the original plans and specifications releases the contractor and his sureties from any liability on the bond.

Evidence which attempted to justify such change was objected to by appellant and objections overruled, and instructions pertaining to such change were tendered and refused. In this the court erred. The statute provides that one of the commissioners of drainage shall be a competent engineer, one of whose duties is to make a computation of the cubic yards of excavation, and the cost thereof, and, as was said in *Broerman* v. *Spilker* (1915), 183 Ind. 88, 90, 108 N. E. 226, provision is made for the services of an engineer to secure accuracy and definiteness, to the end that parties may know in advance the precise character of the proposed drain, and that contractors may have a definite basis for bidding. In this case, the engineer, following the provisions of the statute, estimated the yardage at 159,434 cubic yards, and the cost of the excavation of 10 cents per cubic yard. These figures became the basis for the bidding upon which the contract was let. But in making the computations upon which estimates were paid from time to time, Hygema was allowed 80 per cent of 12 cents per cubic yard instead of 80 per cent of 10 cents per cubic yard, and this was allowed on the whole amount of Hygema's excavations before he abandoned the contract, or on 112,268 cubic yards, more than two-thirds of the total excavation. Without going into the detail of computation, Hygema was thereby paid about $1,800 more money than he was entitled to receive. Some argument is made with reference to variation in cost because of different depths of the ditch, but there is no classification as to

cost of excavation in the report of the commissioners. This was clearly an unwarranted overpayment to Hygema and of necessity to the prejudice of appellant's rights. Claims were filed with the court by persons other than Hygema which were allowed and paid in the total sum of $3,164.34. These claims were for miscellaneous items such as food, clothing, rent, interest, tires, tubes, gas, coal, repairs to machinery, hauling, express, etc. That most, if not all, of these items were not chargeable against the ditch fund, see *Herman Tapp Constr. Co.* v. *Paul* (1921), 77 Ind. App. 305, 131 N. E. 536, 132 N. E. 620.

It appears by the evidence that Hygema was paid a total sum of $11,925.10, and that with the $3,164.34 paid to others on his account, there was paid out of the ditch fund a total of $15,089.44, while the court has found that the value of the work done by Hygema was but $7,000. We cannot concur in appellant's contention that the difference between 80 per cent of $7,000, or $5,600, and $15,089.44 constituted an illegal payment, and a violation of the contract, for the $7,000 may represent a depreciated value resulting from the ditch filling up while in process of construction, as appellee contends, and there was some evidence to that effect. But, as we have pointed out above, about $5,000 of the difference is represented by the payment of claims not chargeable against the ditch fund, and by the overpayment to Hygema on estimates for excavation.

Claims aggregating $4,301.68 were paid from the ditch fund without the certification of the commissioner in charge. This was in direct violation of the statute. §6145 Burns Supp. 1921, §6183 Burns 1926. One Richmire, who seems to have been acting for Hahn, or for Hygema through Hahn, as an agent paying claims for them, or as it seems to us was in the manner adopted loaning money to Hygema re-

ceiving therefor from time to time the estimates made to Hygema, after steps were being taken to annul Hygema's contract, filed his claim with the court for a balance due him in the sum of $1,123.87, which, in the absence of appellant and without its knowledge, was allowed and paid. In *Herman Tapp Constr. Co. v. Paul, supra,* this court held that one who advances money, although for the payment of the claims of laborers or materialmen who in their own right might have had a lien, but who takes no assignment of such claim, does not stand in their shoes, and has no lien against the drainage construction fund. Thus it appears that the payment of the Richmire claim out of the ditch fund was a trespass upon appellant's rights as surety. Any payment of claims from that fund, except such as were expressly authorized by law, thereby increasing appellant's liability, was a violation of its rights under its contract of suretyship.

Appellant has presented other reasons why it contends that it should be released from the contract, but we conclude that it is not necessary to extend this opinion in the discussion of such reasons. It is enough for us to say that the above-mentioned irregularities which appear by undisputed evidence are sufficient, without including others upon which appellant insists, to show such a gross violation of the contract, and of appellant's rights, as to release it from the terms of its suretyship. *Guthrie v. Carpenter* (1904), 162 Ind. 417, 420-422, 70 N. E. 486; *Hubbard v. Reilly* (1921), 51 Ind. App. 19, 25, 98 N. E. 886.

The judgment is reversed, with instructions to grant a new trial.

Dausman, J., absent.