## HOHN *v.* SHIDELER.

[No. 20,404.   Filed November 29, 1904.   Rehearing denied February
15, 1905.]

1. PRINCIPAL AND SURETY. — *Alterations of Contract.* — *Release of
Surety.*—Where a building contract by its terms contemplated altera-
tions, and the submission of same to an architect for computation as
to cost, and it was shown that several small alterations were made
by agreement, without submission to such architect, the surety on
the contractor's bond is not released, since the architect was merely the
agent of the owner, and the provision was for his benefit, which pro-
vision he could waive without injury to any one unless the changes
made materially altered the cost of the building.   p. 244.

2. CONTRACTS.—*Building.*—*Alterations.*—*Release of Surety.*—Where
slight and trivial changes are made in a building and there is no
express provision in the contract authorizing such changes, the mak-
ing of such changes does not release the surety on the contractor's
bond, since such alterations do not constitute an abandonment or
abrogation of such contract, but are contemplated by the agreement
to build.   p. 244.

3. PRINCIPAL AND SURETY.—*Building Contract.*—*Failure of Owner to
Perform.*—*Release of Surety.*—Where the owner agreed with the
contractor to insure a house to be erected, the insurance to go to the
owner and contractor as their interests might appear, but such owner
insured in favor of his mortgagee, but no fire occurred, such con-
tractor's surety is not released, since he is not injured.   p. 244.

4. SAME.—*Building Contract.*—*Failure of Builder.*—*Notice to Surety.*
—*Evidence.*—The surety on a contractor's bond is not entitled to
notice of such contractor's failure to perform his contract, and the
admission of a letterpress copy of a notice to such surety, even if
erroneous, is harmless.   p. 248.

5. TRIAL.—*Special Findings.*—*Failure to Find Facts Proved.*—Where,
in an action by the owner against the surety on a contractor's bond,
the court failed to find certain trivial alterations in the building of a
house, such error is harmless, since such facts, if found, would not
relieve such surety.   p. 248.

From Superior Court of Marion County (57,637);
*Vinson Carter,* Judge.

Action by David B. Shideler against John Hohn.   From
a judgment for plaintiff, defendant appeals.   Transferred
from Appellate Court under §1337u Burns 1901, Acts
1901, p. 590.   *Affirmed.*

*Herod & Herod* and *Hugh D. Merrifield,* for appellant.
*Charles A. Dryer,* for appellee.

Dowling, C. J.—The questions on this appeal arise upon
exceptions to conclusions of law on a special finding, and to
the decision of the court overruling a motion for a new trial.
This is a second appeal. *Standiford* v. *Shideler* (1901), 26
Ind. App. 496. The appellant Hohn was sued by the ap-
pellee on a bond executed by one Standiford, as principal,
and appellant, as his surety, to secure the performance of a
building contract entered into between Standiford, as the
builder, and appellee, as the owner of the contemplated im-
provements. His defense was a discharge from liability by
reason of deviations from the contract without his consent,
and a breach by the appellee by his failure to cause the prop-
erty and materials to be insured.

By the special finding, it appeared that there were several
slight deviations from the original plans and specifications,
in the following particulars: By the mistake of the fore-
man of the builder, and without the knowledge of the appel-
lee, the brick foundation of the dwelling-house was built six
inches higher than the contract required. A change was
made by mutual agreement between the builder and appellee
in the kind and location of a pump, dry well and drain-pipe,
there being no difference in value between the original work
and materials and the substitutes for them. A plastered
wall alongside a stairway, with a door in it, was substituted
for a boarded or wainscoted wall without a door, for which
an agreed charge of $5 was paid by appellee. Appellant
also complains of the substitution of a mantelpiece costing
$32, for one costing $25, the difference being paid by the
appellee; and, although this change is not included in the
special finding, it will be considered in disposing of this
branch of the case. All these alterations and deviations
from the original plans and specifications were made with
the mutual consent of the builder and the appellee, but with-
out written orders of the architects, or a computation by

them of the comparative value of the substituted work and materials and those specified in the contract.

1.   The agreement between the builder and the owner contemplated alterations of the plans of the buildings, and the substitution of materials and work of a different character.   These provisions entered into the undertaking of the appellant as surety on the bond of the contractor, and he was bound by them.   It is true that the building contract declared that all alterations should be made on the written order of the architects; that the value of the work added or omitted should be computed by them; and that the amount so ascertained should be added to or deducted from the contract price.   But the interposition of the architects was exclusively for the protection of the owner, by whom, as the contract expressly states, they were employed, and for whom they were the agents.   The builder was competent to take care of his own interests, and, if the owner of the property saw fit to make changes in his plans, he had the right to do so without aid or authority from the architects.   This condition of the contract being exclusively for his benefit, he could waive it, and such waiver would not affect the liability of the surety, unless the changes so made materially altered the contract price or cost of the buildings.

2.   But had there been no provision in the contract authorizing changes in the plans of the buildings, those described in the special finding and the change in the kind of mantelpiece would not have released the surety.   All the alterations were unimportant in their nature and trivial in value, and were such only as might reasonably be anticipated in the process of the construction of a building.   Alterations of this kind have not been considered evidence of the abrogation or abandonment of a building contract, and the courts have shown an inclination to regard them as contemplated by the agreement and permissible under it.   *Henricus* v. *Englert* (1892), 63 Hun 625, 17 N. Y. Supp. 235.

3.   A question of greater difficulty is presented upon the

finding that the owner was to insure the buildings and the materials on the premises, in his own name or in the name of the contractor, against loss by fire, the proceeds of the policy in case of loss to be paid to the builder and owner as their interests might appear; but that the appellee insured the dwelling-house to the amount of $1,500 for five years in his own name, the policy containing a clause making the proceeds payable to one Henry Frank, a mortgagee, as his interest might appear. This policy was not such as the contract described, and the question is, did the failure of the owner to insure the building and materials in the manner required by the contract release the surety?

The condition of the bond sued on was that Standiford, the builder, should duly perform his contract. It has often been said that the contract of a surety is to be strictly construed in his favor, and that, if liable at all, he is liable only according to the precise terms of his undertaking. Anything done or omitted by the property owner in a building contract to prejudice the position of the surety will discharge him either *pro tanto* or altogether. *Capel* v. *Butler* (1825), 2 Sim. & Stu. 457.

In *Watts* v. *Shuttleworth* (1860), 5 H. & N. 233, Watts, the owner of a warehouse in Manchester, contracted with one Harrap, a builder, for certain property described as "fittings" of the first and second floor of the warehouse, for which the builder was to receive £3,450. One stipulation of the contract was that Watts, the owner, should insure the "fittings" from risk or accident by fire at the expense of the builder. The owner advanced to Harrap, the contractor £1,800. A number of the "fittings" to the value of £2,300 were made and placed in a room in Harrap's workshop, where they were destroyed by accidental fire. The "fittings" were never put up. Harrap having become insolvent, the owner had not been repaid the £1,800 advanced, and had been obliged to pay £340 beyond the sum of £3,450 to another builder to do the work. The "fittings" destroyed

had not been insured by the owner. Shuttleworth was guar-antor for the performance of the work by the builder. After the destruction of the "fittings," the insolvency of Harrap, the builder, and the completion of the work by another contractor, suit was brought by Harrap against Shuttleworth upon the bond, and the foregoing facts were shown. In rendering the judgment of the court Pollock, C. B., said: "The substantial question in the case is whether the omission to insure discharges the defendant, the surety. The rule upon the subject seems to be that if the person guaranteed does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act which his duty enjoins him to do, and the omission proves injurious to the surety, the latter will be discharged. Story, Eq. Jurisp., §325. The same principle is enunciated and exemplified by the Master of the Rolls in *Pearl* v. *Deacon* [1857], 24 Beav. 186, 191, where he cited with approbation the opinion of Lord Eldon in *Craythorne* v. *Swinburne* [1807], 14 Ves. 160, 164, 169, that the rights of a surety depend rather on principles of equity than upon the actual contract; that there may be a *quasi* contract; but that the right of the surety arises out of the equitable relation of the parties. The Master of the Rolls also referred to the judgment of Vice Chancellor Wood in *Newton* v. *Charlton* [1853], 10 Hare 646, 651, where he laid down that a creditor is bound to give the surety the benefit of every security he holds at the time of the contract; that the surety has a complete right to the benefit of it, and if the benefit be lost he would be discharged. * * * We think the plaintiff ought to have insured. It, therefore, seems to us that the plaintiff has omitted to do an act which his duty toward the defendant required him to do; that if he had done it, the defendant would have been relieved to the extent of the insurance; that the omission therefore was injurious to him, and that he has been thereby discharged from the suretyship."

The rule referred to in the opinion just quoted is little more than the statement of the law by Judge Story in the following terms: "Indeed the proposition may be stated

in a more general form; that if a creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act when required by the surety which his duty enjoins him to do, and the omission proves injurious to the surety,—in all such cases the latter will be discharged, and he may set up such conduct as a defense to any suit brought against him, if not at law, at all events in equity." 1 Story, Eq. Jurisp. (13th ed.), §325.

"In *Pearl* v. *Deacon* [1857, 1 De G. & J. 461], 3 Jur. N. S. 1187, a person became surety for a moiety of a debt, with a knowledge that the whole of the debt was secured by a bill of sale of the furniture of the debtor to the creditors, who were his landlords. The creditors took the furniture under a distress for rent, which became due subsequent to the bill of sale. It was held by the Lords Justices, affirming the decision of Sir John Romilly, M. R. (reported 3 Jur. N. S. 879), that the landlords had precluded themselves from appropriating the furniture to any other purpose than the payment of the debt for which it was given as a security. And that the surety was entitled to be discharged to the extent of one-half of the value of the furniture." See note to *Rees* v. *Berrington* (1795), 2 Ves. Jr. 540, as reported in 3 White & T. Lead. Cas. Eq. (3d Am. ed.), 541, *830.

It is also stated in the notes of the editors of the work last referred to, page 543, *832, that as a surety on payment of the debt is entitled to all the securities in the hands of the creditor, whether he is aware of their existence or not, if the creditor, who has had, or ought to have had, them in his full possession or power, loses them, or permits them to get into the possession of the debtor, the surety will, to the extent of such security, be discharged. *Capel* v. *Butler, supra; Ex parte Mure* (1788), 2 Cox C. C. 63; *Law* v. *East India Co.* (1799), 4 Ves. 824; *Williams* v. *Price* (1824), 1 Sim. & Stu. 581; *Philips* v. *Astling* (1809), 2 Taunt. 206.

So, too, it is stated that it is well settled that the negligence or default of the creditor with regard to the property or securities held for the debt is only material when it has resulted in actual injury, and that the surety will be

discharged only to the extent of the injury suffered.   *Ward*
v. *Vass* (1836), 7 Leigh 135; *Payne* v. *Commercial Bank of
Natchez* (1846), 6 Sm. & M. 24; *Neff's Appeal* (1845), 9
Watts & Serg. 36; *Everly* v. *Rice* (1853), 20 Pa. St. 297.

If the rights of a surety are to be determined upon the
equitable principles stated in these cases, it would seem to
follow that although the owner of the property failed to
insure the structure and materials on the premises, yet, as
they were not damaged by fire, and no loss occurred which
such insurance would have covered, the surety was not in-
jured by the default of the owner, and hence was not dis-
charged thereby.   If the property had been injured or
destroyed by fire, as in *Watts* v. *Shuttleworth, supra,* a
different result would have followed.   There was here no
alteration of the contract, nor any omission on the part
of the owner of the property which was injurious to the
surety, and it would be inequitable to hold that the surety
was released on account of an omission which proved to be
entirely harmless.

4.   The admission of a letterpress copy of a notice to the
surety of the failure of the builder to perform his contract
is the next error complained of.   No notice was necessary.
The admission of the evidence, even if erroneous, was
harmless.

5.   The failure of the court to find that a mantelpiece
costing $32 had been substituted for one described in the
contract and costing $25 (the difference being paid by the
owner), and that the owner paid one DeGreenort $10 for
hauling sand, was not such an error as will reverse the
judgment.   These departures from the original plan were
immaterial, were fully authorized by the contract itself, and
were in no way prejudicial to the surety.   If included in
the special finding of the court, they would not have changed
the conclusion of law on the facts.

We find no error.   Judgment affirmed.