[No. 21021.   Department Two.   September 5, 1928.]

W. I. Carpenter Lumber Company, *Appellant*, v. Alex W. Hugill, *Defendant*, Fidelity & Deposit Company of Maryland, *Respondent*.[1]

*G. M. Le Cocq,* for appellant.
*Williams & Cornelius,* for respondent.

Fullerton, C. J.—On June 22, 1923, the appellant, W. I. Carpenter Lumber Company, a corporation, and the defendant, Alex W. Hugill, doing business under the title Blue Band Mills, entered into a written agreement by the terms of which the appellant agreed to purchase from the defendant, and the defendant agreed to sell to the appellant, twelve million extra clear cedar shingles, to be manufactured according to the building rules of the West Coast Lumbermen's Association. The shingles were guaranteed by Hugill not to weigh in excess of one hundred and seventy pounds per thousand.   Delivery was to be made monthly at the rate of two million per month, commencing on July 1, 1923.   The contract further provided that the appellant should make an advance payment on the contract in the sum of six thousand dollars for which Hugill

[1]Reported in 270 Pac. 94.

was to give his promissory note due and payable six months after its date; the note to bear interest at the rate of seven per cent per annum. The contract contained the further provisions, namely:

"(4) The party of the first part agrees to pay the party of the second part for said shingles $2.20 per 1000, less 2% cash discount, f. o. b. cars at Ione, Washington. All cars to be billed to W. I. Carpenter Lumber Company of Minneapolis, Minnesota, Minnesota Transfer, unless otherwise specified.

"(5) In addition to the above $2.20 the party of the first part agrees to credit to the note of said party of the second part as aforesaid, the sum of forty-nine cents per 1000, for all shingles shipped and invoiced by the party of the first part."

The contract was made subject to the condition that Hugill execute to the appellant a surety bond in the sum of six thousand dollars, conditioned for the faithful performance of the contract on his part.

Some few days after the execution of the contract, Hugill applied to the respondent, the Fidelity & Deposit Company of Maryland, for the bond required by the appellant. In making his application, he presented to the agent of the respondent, as the contract between himself and the appellant, an order from the appellant directing him to load and ship to it, at the Minnesota Transfer, in the state of Minnesota, twelve million shingles, at the rate of two million per month, commencing with the month of June, 1923. The order made no mention of the contract theretofore entered into between the parties thereto, nor did it mention the fact that the appellant intended to advance to Hugill the sum of six thousand dollars, nor did it state the actual price the appellant agreed to pay for the shingles; stating the price to be $2.20 per thousand, instead of $2.69 per thousand.

The respondent, after some inquiry into Hugill's financial condition, became his surety upon the bond required. The appellant thereupon advanced to Hugill the sum of six thousand dollars, as provided in its contract. Hugill made no attempt to perform his part of the contract, and subsequently became insolvent. The appellant then went into the open market and purchased shingles from other manufacturers to the quantity called for by the contract, at a cost to itself, as found by the trial court, of $2.53 per thousand. The appellant was also subjected to some additional cost in freight charges, owing to the fact that it was unable to procure in the market shingles as light in weight as was called for by the contract; and there was, of course, some expense incurred in making the purchase.

By taking the difference between the order price of the shingles and the price the appellant actually paid for the shingles in the open market, and adding thereto the additional freight and other charges, there is a resultant loss possibly in excess of the amount of the bond. If, on the other hand, we take the difference between the actual price the appellant agreed to pay for the shingles, and the price it actually paid to procure shingles in the open market, there was no resultant loss, aside from the loss sustained by reason of the advancement made to Hugill.

In the action now before us, the appellant sought to charge the respondent on the contract the respondent purported to make. The respondent, answering the complaint, set up the actual contract between the appellant and Hugill, and averred that it was deceived as to the facts, and thereby induced to enter into a contract which it would not have entered into had the actual facts been made known to it; further averring that it did not acquire knowledge of the true contract

between the parties until long after the execution of the bond; and that, when it did acquire such knowledge, it denied and repudiated any liability upon its bond.

The cause was tried by the court sitting without a jury. The court found the facts substantially as the respondent contended them to be, and concluded, as a matter of law, that the respondent was not liable on the bond. On most of the questions at issue, the evidence was not in substantial dispute. There was a dispute on the questions whether Hugill, at the time he applied for the bond, made known to the respondent the actual contract between himself and the appellant, and whether the appellant, at the time it accepted the bond, had knowledge that the respondent was ignorant of the true nature of the contract at the time it executed the bond. But on these questions we think the evidence abundantly supports the findings of the trial court. There is no dispute that the appellant executed the order, and no dispute that it did not voice the actual contract between the respondent and Hugill. As between the actual parties to it, it was a useless thing, and it is difficult to perceive what purpose it could have if its purpose was not to aid Hugill in procuring a bond.

On the legal questions involved, there are perhaps other grounds upon which the judgment can be rested, but we think it can safely rest on the ground upon which the trial court placed it. It is the rule that parties to contracts of this sort, as in all other contracts, must exercise towards each other entire good faith, and that any concealment of facts which materially affects the contract, or which induces a party to enter into a contract which he would not otherwise enter into, avoids it. As was said in *Griswold v. Hazard*, 141 U. S. 260:

" 'The contract of suretyship,' says Mr. Story, 'imports entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage taken of the surety by the creditor, either by surprise or by withholding proper information, will undoubtedly furnish a sufficient ground to invalidate the contract.' Again: 'If a party taking a guaranty from a surety, conceals from him facts which go to increase his risk and suffers him to enter into the contract under false impressions, as to the real state of the facts, such a concealment will amount to a fraud, because the party is bound to make the disclosure.' "

So in 21 R. C. L., page 987, paragraph 37, it is said:

"The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction. . . . So generally it has been said that if a creditor induces a surety to enter into the contract of suretyship by any fraudulent concealment of material facts, or by any express or implied misrepresentations of such facts, or by taking any undue advantage of the surety, either by surprise or by withholding proper information, there will be afforded a sufficient ground for the invalidation of the contract. . . . "

In this instance, we are satisfied that the concealment was of material facts. There was a concealment, not only of the price to be paid for the shingles, but a concealment of the fact that a material advance payment was to be made to Hugill. The first, standing alone, would perhaps not operate to relieve the respondent from liability on the bond on the principle of non-injury, but the second clearly operates to the injury of the bondsman. The advancement represented, so the evidence disclosed, the profit Hugill could reasonably expect to make out of the transaction. The bondsman was thus deprived of the security the contract gave it, and the contractor was relieved of any incentive to

perform the contract; considerations, as we said in *Black Masonry & Contracting Co. v. National Surety Co.*, 61 Wash. 471, 112 Pac. 517, sufficient by all of the books, to render the bond nugatory.

The judgment is affirmed.

HOLCOMB, MAIN, and ASKREN, JJ., concur.