## MUNCIE BANKING CO. v. AMERICAN SURETY CO. OF NEW YORK.
### No. 10602.

United States Court of Appeals
Seventh Circuit.

Dec. 1, 1952.

Walter D. White, John B. Beasley, Frank E. Gilkison, Jr., Muncie, Ind., for appellant.

Burke G. Slaymaker, Theodore L. Locke, Hugh E. Reynolds, Indianapolis, Ind., Slaymaker Locke & Reynolds, Indianapolis, Ind., of counsel, for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiff, Muncie Banking Company, brought this action on a banker's blanket bond issued to it by the defendant, American Surety Company of New York, claiming that by cashing two checks on September 7, 1948, and September 13, 1948, respectively, the plaintiff had sustained a loss in the amount of $19,650.00 on account of "false pretenses" within the meaning of the bond. The complaint also alleged that: "Plaintiff has done and performed all the conditions and requirements of said contract on its part to be performed." A copy of the bond was filed as an exhibit to and made a part of the complaint.

This bond insuring the plaintiff against loss was expressly made subject to the following *condition and limitation*:

"The Insured shall give to the Underwriter written notice of any loss hereunder within a reasonable time after the Insured shall learn of such loss, and within one hundred and twenty days after learning of such loss shall file with the Underwriter an itemized proof of claim duly sworn to."

The defendant answered that it did not receive notice of the alleged loss until June 28, 1949, and that the proof of claim was not filed until August 26, 1949. The answer said that the notice of loss was not given within a reasonable time after the plaintiff learned of the loss and that the verified itemized proof of claim was not filed with the defendant within 120 days after knowledge of the loss had come to the plaintiff.

The plaintiff is a private bank, wholly owned by Oliver W. Storer, with its principal office and banking house in Muncie, Indiana, and with a branch office and bank in Eaton, a small town located a few miles north of Muncie. At the time of the transactions here involved J. M. Hendricks was, and had been for several years, a resident of Eaton. Hendricks was engaged in the business of buying at auction automobiles which he then sold in his places of business at Muncie and also at Eaton. Vernon Taylor was a resident of Eaton and was engaged in the used car business with Hendricks. To secure the necessary cash to buy cars at auction these two men conceived and operated a scheme of kiting their personal worthless checks. To carry out their scheme Taylor opened an individual checking account in the Yorktown State Bank which was located a short distance west of Muncie. On this account Taylor drew checks to Hendricks for more than the balance in the account. Hendricks would then endorse the checks back to Taylor who would take the checks to plaintiff's Eaton branch, where Hendricks was a depositor and customer, and would then exchange them for

cashier's checks payable to Hendricks. Hendricks then endorsed the cashier's checks to Taylor who finally took them to the plaintiff's bank in Muncie to which he endorsed them and exchanged them for currency. In the meantime, plaintiff's Eaton branch would send Taylor's checks through the Merchants National Bank of Muncie or through the Continental Illinois National Bank and Trust Company of Chicago for collection. It would be from three to six days before these checks drawn by Taylor would finally be returned to the Yorktown State Bank for collection.

In this interval of time Taylor and Hendricks were able to procure cash, by the sale of the automobiles or otherwise, in sufficient amounts to cover the checks. They were able to do this until the check dated September 7, 1948, was returned to the Yorktown State Bank. From December 5, 1947, to September 7, 1948, they handled and procured cash in this manner on 206 checks which totaled in amount $1,228,946.51. Between September 7, 1948, and September 13, 1948, Taylor and Hendricks, by such manipulation of checks, received from the plaintiff a total sum of $19,650.00 on the two above mentioned checks drawn by Taylor on his Yorktown State Bank account. There were insufficient funds in said account to cover these checks when they were drawn and also insufficient funds to pay the checks when they were returned for collection.

Plaintiff was informed on September 11, 1948, by telegram from the Continental Bank in Chicago, through which the first of these two checks had been sent for collection, that the check had not been paid. Plaintiff's Eaton branch advised Taylor that the check had been dishonored but was induced by Taylor, on his representation that the check was "all right," to send it through again for collection. On September 16, 1948, when the check reached the Yorktown Bank the second time, Taylor's account showed a balance of only $8.93. The second check was never presented to the Yorktown Bank because the plaintiff learned from that bank that there were insufficient funds in Taylor's account to cover it.

Storer, the owner of the plaintiff bank, had personal knowledge of the non-payment of these two checks not later than September 16, 1948. Shortly after this time Storer demanded payment of the checks from Hendricks and Taylor and they agreed to repay the amount in full. On September 26, 1948, Hendricks and Taylor started to make instalment payments and continued to make payments until January 19, 1949. During that period they had repaid the sum of $1,970.00. After January 19th they made no further payments. On May 17, 1949, the plaintiff filed an action on these checks against Taylor and Hendricks in the Delaware Superior Court of Delaware County, Indiana.

The first notice of this loss to the defendant was by a letter from the plaintiff's attorneys dated June 27, 1949, more than nine months after Storer had learned of the loss. Approximately two months after the notice of loss the plaintiff filed its verified itemized proof of claim. No reason was assigned by the plaintiff for the long delay in giving the notice and in filing the proof of loss.

The District Court found that the first notice of loss, given to the defendant on June 28, 1949, was not given "within a reasonable time" after the plaintiff learned of the loss and the court also held that the giving of notice within a reasonable time was a condition precedent to the liability of the defendant.

The plaintiff alleged in its complaint that it had "done and performed all of the conditions and requirements of said contract on its part to be performed." In its brief plaintiff admits that it had the burden of proving this. In its brief plaintiff also admits that the "giving of notice within a reasonable time is a condition precedent to recovery." But the plaintiff says "the only real question here is whether a reasonable notice was given."

We find some assistance in interpreting the words "reasonable notice," as

used in this policy, in the paragraph of the policy entitled "Loss—Notice—Proof." It is there first provided that the insured shall give notice of any loss within a reasonable time and, second, that the insured shall file the verified itemized proof of claim within 120 days after the loss. It seems logical to assume that the parties here intended that the notice should be given prior to the time the proof of claim was filed and that the "reasonable time" within which the notice should be given was, therefore, at most, something less than the 120 days allowed by this paragraph of the policy for filing the proof of claim.

Many Indiana decisions in interpreting "reasonable time" for filing notice of loss have considered the attendant circumstances relevant in determining whether the notice had been filed within a reasonable time. In Railway Passenger Assurance Co. of Hartford v. Burwell, 44 Ind. 460, a disability insurance contract calling for immediate notice of an accident was held to require notice "only within a reasonable time under the attending circumstances." There the insured and the agent of the insurer resided in the same city. The complaint alleged that notice of the accident had been given within five days. The court held, 44 Ind. page 464, that the complaint was defective "for the want of earlier notice of the happening of the accident or the averment of some legal and proper excuse for not having given the notice sooner." The court there pointed out why it was important that the insurance company should be notified promptly. In Pickel v. Phenix Ins. Co., 119 Ind. 291, 300–301, 21 N.E. 898, the court, in an action on a fire insurance policy, also held that the policy required notice of the loss within a reasonable time and that an unexplained delay of 50 days in giving such notice was unreasonable. In Knight & Jillson Co. v. Castle, 172 Ind. 97, 105, 87 N.E. 976, 979, 27 L.R.A.,N.S., 573, in an action on a construction bond which required notice within ten days, it was held that such notice was "a condition precedent to a recovery, and compliance therewith must be averred and proved." The

Appellate Court of Indiana, in an action on a burglary policy which provided for immediate notice, held that notice within a reasonable time was required and that a complaint which failed to give the time of the notice was defective. There the court said, 32 Ind.App. at page 452, 70 N.E. at page 168: "If the notice was given eight or nine months after the burglary—and we cannot presume, in aid of the pleading, that it was not so given, the notice was not within a reasonable time." Fidelity & Casualty Co. v. Sanders, 32 Ind.App. 448, 452, 70 N.E. 167.

The appellant apparently contends that notice, no matter when given, is within a "reasonable time" if the insurer is not shown to have been prejudiced by the delay in giving the notice. To support this contention the plaintiff relies strongly on Insurance Company of North America v. Brim, 111 Ind. 281, 12 N.E. 315. The action there was on a fire insurance policy which called for immediate notice, interpreted by the Indiana court to require only reasonable notice. The insured gave notice 13 days after the fire. The court there, 111 Ind. at page 286, 12 N.E. at page 317, pointed out that the purpose of the notice was to enable the insurance "company to take proper precautions for its own protection. The notice must be reasonable under all the circumstances." The plaintiff relies principally on the statement in that case, 111 Ind. at page 287, 12 N.E. at page 318, that: "* * * since it does not appear that the company made any objection to the claim on account of the insufficiency of the notice, or that any detriment resulted to it on account of the delay, the notice was, under all the circumstances, reasonably in time." We think that the most that can be properly contended for from this language was that the court there considered prejudice as one of the circumstances which might be considered in determining whether the notice was given within a reasonable time. In that case the court also said, 111 Ind. at page 285, 12 N.E. at page 317: "Some circumstances appeared in the evidence tending to show an excuse for not notifying the agent at

an earlier period." But the court there recognized that the failure to have given notice within a reasonable time would have been fatal to the plaintiff's case. The court said, 111 Ind. at page 287, 12 N.E. at page 318, " * * * if the notice had been unreasonably delayed, without any circumstances of excuse, a failure to object to a notice given, after the right of action on the policy had expired, would not revive the right."

The plaintiff also cites Metropolitan Life Insurance Co. v. Peoples Trust Co., 177 Ind. 578, 98 N.E. 513, 41 L.R.A.,N.S., 285, which involved an action by an administrator on a life insurance policy. In that case the policy fixed no time for filing proofs of death. The court there said, 177 Ind. at page 584, 98 N.E. at page 515: "Under the allegations of the second paragraph of complaint, neither appellee (the administrator) nor any one of the ultimate beneficiaries had any knowledge of the fact of the existence of the policy until a few days before proofs were made. We think the circumstances here alleged excused the long delay."

London Guarantee & Accident Co. v. Siwy, 35 Ind.App. 340, 66 N.E. 481, 483, was also cited by the plaintiff. That case involved an employers liability policy insuring the employer's liability for injuries to employees. The policy provided for immediate notice to the company of the occurrence of an accident and also of any claim on account of an accident. The insurer was notified of the accident there involved the day following its occurrence but the insured failed to notify the company of an action against it arising out of this accident until three months after the action was filed. The court held that the notice of the claim on account of the accident had not been given within a reasonable time. The court there also pointed out the importance of the insurer having prompt notice of such a claim in order to enable it to assume the defense of any action filed and to attempt to negotiate a settlement of the claim with the insured or with the injured employee. After pointing out the vital importance of prompt notice the court said: "No sufficient ex-cuse is shown by the evidence why such notice was not given."

The plaintiff attempts to distinguish the authorities on which the defendant relies on the ground that they, for the most part, "dealt with fire, burglary and personal injury insurance, in each of which anything other than a prompt notice is bound to be incurably prejudicial." It would seem to us that prompt notice in the instant case was equally, if not more, important than in the fire, burglary and personal injury cases. Here Hendricks and Taylor were engaged in an established automobile business. They had two places where they were selling the automobiles which they had bought at auction for cash. We must, therefore, assume that they owned the automobiles which, they had bought and paid for and which they had not sold. In securing cash on the two checks here in question Hendricks and Taylor perpetrated a criminal fraud on the plaintiff. During the ensuing four months the plaintiff was able to collect from them sums totaling only $1,970.00 to apply against the loss. The payments they made very probably represented only a portion of the proceeds of their sales of automobiles during that period. These men were customers of the plaintiff bank. They had had numerous business dealings with the plaintiff. If the defendant, a stranger to these two men, had been given prompt notice of the claim and had been able to step into the picture shortly after the loss occurred it could have chosen the course to pursue in attempting to secure repayment. In such a case as this a stranger experienced in such matters might have been much more likely to have succeeded in enforcing collection than the plaintiff, the friendly banker of these two men. With the defendant active in the matter Hendricks and Taylor would have been given less opportunity to conceal or to dispose of whatever assets they then had. But whatever may have been the actual outcome had the defendant been given reasonable notice and the opportunity to attempt to recoup the loss is immaterial. Defendant had agreed to insure such losses only on the condition that it be given rea-

sonable notice and the right to try to protect itself. As the Supreme Court of Indiana said in Knight & Jillson Co.. v. Castle, 172 Ind. 97, 108, 87 N.E. 976, 980:

"Here the surety company has imposed conditions of its liability which are not unreasonable, but are for its protection, and, we must presume, adapted for a lawful end; and we cannot make a new contract for the parties, or extend the liability of one or the rights of the other, and one of these conditions is that it shall be given 'notice of any act which may involve a loss * * * for which the surety is responsible hereunder, within ten days after the occurrence of the act' * *. If, therefore, appellant seeks to avail itself of the provisions of the bond, it must do so on the conditions imposed."

We think that under the circumstances disclosed in this case, where there was no attempt to explain or to excuse the long delay, the District Court was clearly right in holding that the notice given by the insured nine months and twelve days after learning of the loss was not given within the reasonable time required by the insurance contract.

Having so held on this question, it is unnecessary for us to consider the other points urged by the plaintiff.

The judgment of the District Court is

Affirmed