WABASH LIFE INSURANCE COMPANY *v.* HACKER

[No. 19,124. Filed February 24, 1960.]

*Clinton H. Givan* and *Richard M. Givan,* both of Indianapolis, for appellant.

*Gerald C. Purdy,* of Indianapolis, for appellee.

SMITH, J.—This is an appeal from a declaratory judgment construing certain provisions of a brokerage contract.

The issues were formed by the filing of appellee's complaint for declaratory judgment. The cause was submitted to the trial court by stipulation, whereby it was stipulated by and between the parties that the complaint filed by the appellee contained and recited an accurate copy of the contract in question, the contract being the only evidence presented in this case.

The complaint alleges that in the process of carrying out the provisions of the contract, a controversy arose

between the parties as to the meaning of certain language used in the sixth paragraph of the contract. The following is the sixth paragraph of the brokerage agreement:

"This Agreement may be cancelled by either Party hereto upon thirty (30) days' written notice to the other. Termination under this paragraph: In the event of termination of this Agreement and after this Agreement has been in force for twelve (12) full months renewal commissions shall be payable as follows: Provided this Agreement is in force for one (1) year renewal commissions shall be payable for two (2) full years following termination—two (2) full years' renewal commissions are payable for two (2) years; three (3) full years' renewal commissions are payable for three (3) years; four (4) full years' renewal commissions are payable for four (4) years; five (5) full years' renewal commissions are payable for five (5) years. Under no circumstances are the renewal commissions payable for more than five (5) years after termination date. Renewal commissions, as provided in this paragraph, apply to business specifically issued under the policy name, Union Labor Group. *If renewal commissions are payable after termination of this Agreement, the Company is entitled to and shall withhold five per cent (5%) from the renewal commissions provided herein as a service and collection fee.*" (Our emphasis.)

The controversy between the parties is over the interpretation of the words "the Company is entitled to and shall withhold five per cent (5%) from the renewal commissions provided herein as a service and collection fee." The trial court found that the phrase in question should be construed to mean five per cent (5%) of the *renewal commissions* to be paid from the renewal commissions and does not mean five per cent of the *renewal premiums* to be paid from the renewal commissions.

The appellant filed a motion for a new trial which contained but one specification, namely: that the decision of the court is contrary to law. The appellant assigned as error the overruling of the motion for a new trial.

The appellant in interpreting the words "five per cent (5%) from the renewal commissions provided herein as a service and collection fee," contained in the sixth paragraph of the brokerage contract, contends that this language means five per cent of the *renewal premiums* to be withheld from the renewal commissions as a service and collection fee. Appellant's contention is founded upon the theory that insurance commissions are based upon the amount of premiums and that that is the only basis upon which any construction of this contract can be made; and since there is no recited basis for determining the five per cent, the five per cent is required to be based upon the amount of the premiums.

The appellee on the other hand maintains that "it is so universal as to be almost axiomatic that deductions are expressed in terms of a percentage of the amount from which they are deducted and not a percentage of the amount from which they are deducted is based." Therefore, it appears to be the contention of the appellee that the words "five per cent (5%) from the renewal commissions provided herein as a service and collection fee" means five per cent of the *renewal commissions* which is to be withheld from the renewal commissions as a service and collection fee.

The construction of a contract is mainly controlled by the construction as intended by the parties as such intention appears from the language used by the parties within the four corners of the written instrument. *Sindlinger* v. *Dept. of Financial In-*

*stitutions* (1935), 210 Ind. 83, 199 N. E. 715; *Elliott* v. *Travelers Ins. Co.* (1951), 121 Ind. App. 400, 99 N. E. 2d 274. There was no evidence presented in the case at bar concerning practical usage or construction of similar provisions by the brokerage or insurance profession. The controversial paragraph, as quoted above, provides for the payment of "renewal commissions" whenever the contract is terminated after having been in force for twelve months. These apparently are renewal commissions that were to be paid to the appellee for a specified time, depending upon the number of years, up to five years, that the agreement has been in force. Consistently, and without deviation, the identifying or descriptive words "renewal commissions" are used, and no reference is made at all to "renewal premiums." It is also provided that the five per cent service and collection fees are to be withheld from the renewal commissions *"provided herein."* Now, if the words "provided herein" are to be given any effect at all, the source from which the collection and service fee is to be taken and upon which the five per cent is to be computed, must of necessity, be the "renewal commissions." Such construction gives full, easy, reasonable and understandable meaning to the language used by the parties, and supplies vitality to the plan the parties to the contract laid out and expressed therein concerning payment of commissions to the appellee after the termination of the contract. To say that the five per cent is to be reckoned and based upon the "renewal premiums" not only places in the contract words which are not there, thus creating a new contract for the parties, but also runs counter to the evident intention of the parties as expressed by them in simple, plain and unambiguous language. If the parties had not intended that the collection and service fees were to

be measured upon the renewal commissions, they, no doubt, would have expressed such intention by providing, for example, that the insurance company is "entitled to *five per cent of the renewal premiums and shall withhold the same* from the renewal commissions provided herein, etc.," or other suitable phraseology.

It seems apparent that the purposes of the above quoted clause of the contract was to provide commissions for the appellee on insurance contracts renewed subsequent to the termination of the brokerage contract, for a period of years varied by the number of years the agreement was in force prior to its termination. For its service in collecting such commissions for appellee, the appellant, by contract, was allowed a fee to which it "is entitled," and "shall" withhold "from" such renewal commissions. It seems logical to conclude, as apparently did the trial court, that there being no other explanatory provision in the contract to the contrary, the parties intended exactly what they said, viz.: that the appellant "is entitled to . . . five per cent from the renewal commissions provided herein." Appellant urges that the contract does not "say" whether the service fee is to be based "upon the commission or upon the premium." However, the contract does "say" that the appellant is entitled to a five per cent service fee to be withheld from the renewal commissions, and, while appellant seems to interpret that provision as naming and designating the fund out of which the five per cent fee is to be taken and not the "basis" for determining the amount of the five per cent fee, it seems quite obvious that the parties, by the very language they adopted in the contract meant and intended that the renewal commissions should furnish both the "basis" for the computation of the service and collection fee and the fund out of which the same should be

withheld by the appellant. Appellant's proposal, if followed, leads to an anomalous situation wherein appellee would be required to pay the appellant five per cent of that part of the total premiums which represents appellant's profit in the operation of its insurance business. While the parties may be at liberty to enter into such a contract provision, they do not seem to have intended so to do by the provision of the contract now under surveillance. Appellant took no steps below looking to a reformation of the contract in any particular but rested its case upon a declaration to be made by the trial court as to the meaning and construction of the involved contract provision as written. Thereby, the burden devolved upon appellant to demonstrate by the record that the declared construction of the contract by the trial court was contrary to law. Appellant has not convinced this Court, either by cogent argument or cited authority, that the judgment declared by the trial court is erroneous or contrary to law.

It is the contention of the appellee, a contention which is not refuted by the appellant, that the appellant furnished the contract form and supplied the ambiguous and controversial language contained in the sixth paragraph of the contract. It is well settled that where a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. 6 I.L.E. 179; *Smith* v. *Sparks Milling Co.* (1942), 219 Ind. 576, 39 N. E. 2d 125, 135. Applying this principle to the contract in question, the meaning and intent of the controversial language will have to be construed most strongly against the appellant and in favor of the appellee. This can lead to but one conclusion that the amount of the service and collection fees should be based on the amount of the renewal commissions and

not on the amount of the renewal premiums. To hold otherwise would result in an absurdity. It is possible under the appellant's interpretation of the contract, that the amount of service and collection fees withheld by the appellant insurance company could exceed the amount of the renewal commissions; and the appellee brokerage agent could find himself in the position of owing money to the appellant insurance company provided that the five per cent of the renewal premiums exceeded the total amount of the renewal commissions. It certainly should be assumed that no brokerage agent would knowingly and intentionally negotiate a contract whereby he could end up owing the insurance company service collection fees in excess of the amount of his renewal commissions. It seems quite apparent that a service and collection fee amounting to five per cent of a renewal premium is an exhorbitant and unreasonable collection and service fee.

For authority to substantiate appellant's contention, the appellant relies solely on the case of *Thomas* v. *Vidal* (1931), 255 N. Y. 628, 171 N. E. 343 (in the Appellate Division of the Supreme Court of New York this case is cited as 230 App. Div. of Sup. Ct. 589). In this case the contract clause under consideration read as follows:

> "Fourteenth. In the event of termination of this contract . . . after two years of continuous service, then the renewal commissions as herein provided shall continue to be paid to the agent or his legal representative for the same period as if this contract had been continued in force, *subject to a deduction of two per cent (2%) per annum for collection.*" (Our emphasis.)

The New York Court of Appeals, in affirming the decision of the Appellate Division of the Supreme Court

of New York, held the phrase "subject to a deduction of two per cent (2%) per annum for collection" to mean that the collection fee was to be computed upon the *renewal premiums* to be collected.

It is our opinion that this case can be distinguished from the case at bar in several respects. The decision is a per curiam opinion of the New York Court of Appeals affirming a decision of the Appellate Division of the Supreme Court in which opinion this language appears:

> "The practical result so obtained is in consonance with what we conceive to be the natural contract under such circumstances and is in accord with the practical construction *of which there is evidence.*" (Our emphasis.)

We can find no recital of the evidence in the opinion but it is apparent that the court's decision is based upon evidence presented at the trial pertaining to the intention of the parties as supported by the evidence of the practical construction given such provision. Therefor it can only be the law of that particular case and should not be construed as laying down a general dule of construction. It appears to us that the words "per annum" are significant. Insurance premiums are charged on an annual basis. Insurance commissions are not charged annually but accrue when the premiums are actually paid. Therefore, it is probable that the New York Court took those words into consideration in deciding that "two per cent per annum" meant two per cent of the premiums and not two per cent of the commissions. Finally, the fact that the deduction was two per cent in the New York case and five per cent in the case at bar is also significant. While two per cent of the renewal premiums would be a rather large service and collection fee, the two per cent fee would be much easier to justify than a service and

collection fee of five per cent which, in some cases, would amount to a confiscation of the entire commission.

Judgment affirmed.

Bierly, P. J., Gonas and Kelley, JJ., concurring.

NOTE.—Reported in 164 N. E. 2d 666.