**CHRYSLER CORPORATION,**
**Plaintiff-Appellee,**

v.

**The HANOVER INSURANCE COM-**
**PANY, Defendant-Appellant.**

**No. 14900.**

United States Court of Appeals
Seventh Circuit.

Sept. 3, 1965.

Rehearing Denied Oct. 8, 1965.

Hugh E. Reynolds, Jr., Indianapolis, Ind., Hugh E. Reynolds, Lloyd H. Milliken, Jr., Indianapolis, Ind., Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., of counsel, for appellant.

R. Stanley Lawton, James E. Hawes, Jr., Indianapolis, Ind., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel, for appellee.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

This appeal arises in a suit by plaintiff, Chrysler Corporation, against the defendant, The Hanover Insurance Company,[1] upon a performance bond issued by defendant, as surety, and Indiana Tempered Air, Inc., hereinafter referred to as ITA, as principal. Judgment was entered for plaintiff. Defendant appeals.

ITA, now bankrupt, was an installer and retailer of plaintiff's air conditioning equipment. ITA was owned by Christopher Meyer, who also owned Temperature Control, Inc., hereinafter referred to as TC, a distributor of plaintiff's products. At all material times, the pattern of operation of those two corporations was that TC bought from plaintiff and sold to ITA, which in turn sold to the public.

On September 6, 1957, plaintiff entered into a contract with the American Fletcher National Bank, hereinafter referred to as AFNB, to install air conditioning in the bank's building at Indianapolis, Indiana. On November 12, 1957, plaintiff entered into a subcontract with ITA whereby ITA undertook to furnish all the labor and materials for the installation of the equipment to be furnished by plaintiff for the building.

Plaintiff agreed to pay to ITA $140,-000.00 for the project. Payment was to be made by periodic progress payments equal to 90% of the work completed to the time of each billing. The remaining 10% of the contract price was to be retained by plaintiff and paid

---

1. Successor to the original defendant, Massachusetts Bonding and Insurance Company.

upon completion of the project and acceptance of the work by plaintiff, but only after ITA had submitted satisfactory proof to plaintiff that it had paid for all labor and materials for which a lien could be asserted against the AFNB real estate.

The contract required ITA to furnish to plaintiff a surety bond for the faithful performance by ITA of the subcontract. On November 26, 1957, ITA, as principal, and defendant, as surety, executed and delivered the $140,000 bond in suit pursuant to that contract requirement.

Prior to the date of the subcontract, TC was indebted to plaintiff in an amount in excess of $500,000. Plaintiff had refused to extend to it any further credit. To obtain the AFNB subcontract, ITA agreed with plaintiff that 30% of the contract price should be applied by plaintiff to the reduction of the TC debt. The oral agreement was that plaintiff would deposit money equal to 70% of each progress billing in ITA's bank account, would credit 20% of each such billing to reduction of the TC indebtedness and would, upon completion of the contract, credit the 10% which plaintiff had retained likewise to the reduction of the TC debt.

Plaintiff also guaranteed a loan of $35,000 from AFNB to ITA which was necessary to enable ITA to undertake the performance of the contract.

Upon progress billings from time to time in the amount of $126,525.65, plaintiff retained $12,652.57, applied $16,678.-69 to reduction of the TC indebtedness and deposited to ITA's account the balance of $97,194.39.

In August, 1958, mechanics' liens totalling $51,000 were filed against the AFNB premises. Other mechanics and materialmen demanded from plaintiff and AFNB payment of their claims and threatened to file liens unless payment was made. ITA advised plaintiff that it could not pay the sums demanded and that it then owed about $100,000 for material and labor, not including material and labor not then billed.

After an audit of the books and records relating to the several claims, plaintiff paid for materials and services rendered to ITA in the performance of its subcontract the sum of $107,253.20.

Though ITA threatened to abandon performance of the contract, it continued in the performance thereof at plaintiff's insistence until October 8, 1958, when a bankruptcy proceeding was filed against ITA. Thereafter, plaintiff undertook to complete the performance of the subcontract by successive agreements with the receiver and trustee of ITA and, ultimately, through its own factory branch. In that endeavor, plaintiff incurred expenses of $5,826.42 for work performed in the completion of the contract and warranty work required by the subcontract.

Plaintiff notified defendant of the default and of its claim under the performance bond in November, 1958. After defendant rejected plaintiff's claim, plaintiff filed this suit on April 30, 1959.

ITA defaulted on its AFNB loan. On September 2, 1958, plaintiff paid that obligation in the amount of $32,506.96.

The court below found that plaintiff had fully performed all obligations imposed upon it by the contract and the bond, that its payments to materialmen and mechanics were reasonable payments for lienable materials and services rendered in the performance of the ITA contract, that plaintiff had expended $113,079.62 required for the completion of the subcontract and that defendant had failed to prove its defenses of lack of notice of default and alteration of the subcontract.

Although the court found that the proceeds of the $35,000 loan were used by ITA in the performance of the contract, it also found that plaintiff could not retain to defendant's detriment $26,589.72 applied by plaintiff to the AFNB guaranteed loan. The court also found that the $16,678.69 applied by plaintiff to reduction of the TC indebtedness could not be retained by plaintiff to the detriment of defendant. After the subtraction of those items, the court entered

judgment for plaintiff in the sum of $69,-569.64, together with interest from April 30, 1959, to the date of judgment.

■ The major contention by defendant against that judgment is that plaintiff's failure to give notice of ITA's default until November 28, 1958, released defendant from its liability to plaintiff under the bond.

Defendant's argument might have some merit if we were at liberty to re-write the bond which it issued. Lacking that liberty, we reject the argument for the reasons hereinafter stated.

The bond, which incorporated the subcontract into its provisions by reference, contained no mention of notice of default. After stating the primary obligation of performance, the bond provided in pertinent part:

"Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:

"(1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or:

"(2) Obligee after reasonable notice to Surety, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein; * * *."

The subcontract provided that plaintiff, upon the default of ITA and notice to ITA, might "without prejudice to any other remedy he may have, make good any such deficiencies" or defaults.

■■ It is a cardinal rule of construction of legal instruments that an instrument will be construed strictly against its author; and that an indemnity contract of a paid, professional insurer will be construed broadly in favor of coverage and against exculpation. German American Ins. Co. v. Yeagley, 163 Ind. 651, 71 N.E. 897, 900; Wabash Life Ins. Co. v. Hacker, 130 Ind.App. 342, 164 N.E.2d 666, 668–669.

This defendant drew the distinction between remedying a default and arranging "for the performance" of the contract obligation. It is only within the latter context that there is in this bond any reference to notice. Plaintiff retained the right under its contract with ITA "to make good any deficiencies" or default by ITA. That right is recognized by defendant by its incorporation of the contract in the bond which it issued, and that right must be given full effect. Hohn v. Shideler, 164 Ind. 242, 72 N.E. 575, 576; State ex rel. Interstate Public Service Co. v. Lund, 80 Ind.App. 349, 139 N.E. 466, 467.

By making the payments necessary to obtain a release of the liens upon the AFNB premises arising out of ITA's default and by its completion of the contract plaintiff did nothing more than exercise that right which it had, by its contract, reserved to itself. It did not arrange to have any of the work done, that being the only context in which this bond speaks of notice. Defendant cannot now impose a burden of notice upon plaintiff which is not expressly required by the bond. Louisville Underwriters v. Durland, 123 Ind. 544, 24 N.E. 221, 223; Wabash Life Ins. Co. v. Hacker, 130 Ind.App. 342, 164 N.E.2d 666, 668–669.

We find no error in the findings of the court that the notice of claim filed in November, 1958, was reasonable and that defendant was not prejudiced thereby. No purpose could be served by discussion of the several cases cited by defendant in this context. The provisions contained in each of the contracts there in suit are so dissimilar to the provisions of this bond that such cases lend no support to defendant's position. E. g., Muncie Banking Co. v. American Surety Co., 7 Cir., 200 F.2d 115; Equitable Life Ins. Soc. v. Kellerman, 224 Ind. 526, 69 N.E.2d 244; Knight & Jillson Co. v. Castle, 172 Ind. 97, 87 N.E. 976; Beech Grove Imp. Co. v. Title Guaranty & Sur. Co., 50 Ind.App. 377, 98 N.E. 373. Cf., Potomac Ins. Co. v. Stanley, 7 Cir., 281 F.2d 775.

Defendant's second major contention is that it was released, or prejudiced, by the agreement to apply 30% of the contract price to the payment of the pre-existing TC indebtedness.

At the outset it may be noted that defendant does not contend that there was any post-bond modification of the agreement between plaintiff and ITA. The court below did not so find. It did find that defendant had failed to sustain its defense based upon this theory, but it also found that there must be a pro tanto reduction of liability to the extent of such payments on the TC account. It therefore appears that defendant had the benefit of all relief to which it would have been entitled had its defense been proved. E. g., Foster v. Gaston, 123 Ind. 96, 23 N.E. 1092, 1096.

The court below found that defendant had no knowledge of the agreement to apply a part of the contract proceeds to the reduction of the TC account, and the evidence indicates that ITA did fail to disclose that fact and that it made certain misrepresentations of fact in its application for the bond. Those misrepresentations are no defense to plaintiff's claim. Plaintiff made no representations to defendant whatsoever, and it had no obligation to do anything to make certain that defendant was not misinformed. National Surety Co. v. Russell, 7 Cir., 66 F.2d 104, 109; Carey v. State, 213 Ind. 181, 12 N.E.2d 131, 134. Misrepresentations or fraud by a principal to a surety are not chargeable to the obligee absent proof that the obligee had notice thereof. Carey v. State, supra, 12 N.E. 2d at 134; Fassnacht v. Emsing Gagen Co., 18 Ind.App. 80, 46 N.E. 45, 46, 47 N.E. 480; Lambert v. Heaton, Fla.App., 134 So.2d 536, 539.

The opinion in W. I. Carpenter Lumber Co. v. Hugill, 149 Wash. 45, 270 P. 94, 95–96, does tend to support the thesis that material misrepresentations by a principal will release the surety from liability to the obligee. To the extent that the fraud of the principal is imputed to the obligee without proof of the obligee's notice thereof, the Hugill opinion is clearly opposed to the law of Indiana as pronounced in Carey and Fassnacht. Defendant's reliance thereon is misplaced.

There was no modification of this contract by the oral agreement to credit a part of each payment to the pre-existing debt. "Payment" is the discharge of an obligation in money or its equivalent. Merchants Nat. Bank & Trust Co. v. Winston, 129 Ind.App. 588, 159 N.E.2d 296, 302. Acceptance of the equivalent is not a contractual change. National Surety Co. v. Russell, 7 Cir., 66 F.2d 104, 109–110; Foster v. Gaston, 123 Ind. 96, 23 N.E. 1092, 1094–1095.

The cases cited by defendant in which a surety was held to be released by the modification of a bonded contract dealt with the circumstance of modification of the contract provisions after the bond had been issued without notice to the surety. Lutz v. Frick, 242 Ind. 599, 181 N.E.2d 14; Couch & Son v. Parker, 188 Ind. 660, 125 N.E. 453, 7 A.L.R. 1098; Hartford Accident & Indemnity Co. v. State, 94 Ind.App. 531, 159 N.E. 21.

The contrast between those cases and this case is obvious. This contract provided for the payment of $140,000 to ITA. It did not specify in what medium payment would be made. The payments were actually made in accordance with the agreement of the parties, and there was no post bond modification of the method of payment. If defendant was prejudiced it was prejudice occasioned by the failure of its principal to fully disclose the facts in its application and not prejudice occasioned by any act of plaintiff.

It may well be that defendant would have refused this bond application had ITA fully disclosed all of the facts, despite the fact that it had bonded ITA on a number of previous contracts. That is wholly beside the point inasmuch as defendant is defending against the claim of the innocent obligee, not that of its principal.

We find no error in the court's computation of damages. For the reasons stated the judgment is affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

From the district court's findings, it appears *inter alia* that Meyer was president and owner of ITA and TC. On November 12, 1957 ITA contracted with Chrysler to furnish labor and materials for the installation of air conditioning equipment in a bank building in Indiana, for which it was to be paid $140,-000, as follows: 90% for the work and materials furnished during stipulated periods, and 10% upon completion and acceptance of the work by Chrysler. This contract was secured by a performance bond (now in suit), which named Chrysler as obligee.

However, prior to the execution of said contract and bond, TC had become indebted to Chrysler for over half a million dollars, causing Chrysler to require cash payment for purchases by TC. Then ITA agreed that it would use 30% of the subcontract payments to reduce TC's indebtedness to Chrysler. This arrangement was followed, except as below mentioned.

ITA defaulted on its bank indebtedness guaranteed by Chrysler and theatened to abandon its subcontract and Chrysler was required to satisfy various claims against ITA which was followed by bankruptcy proceedings against ITA and TC.

Hanover, defendant, did not know of the indebtedness of ITA, the guaranteed loan or the arrangement for 30% payment on the TC debt.

Hanover did not appear to protect its interests, if any, in the bankruptcy proceeding.

Chrysler, pursuant to an arrangement with ITA, applied a substantial part of the contract price to the payment of a pre-existing indebtedness of TC. Later Chrysler permitted Meyer to obtain 90% progress payments for four weeks and then resumed the deductions for several more weeks. The court found that Chrysler proposed and ITA agreed that, if it were given the subcontract, ITA would use 30% of the subcontract payments to reduce the TC indebtedness to Chrysler. This arrangement was a condition to Meyer's getting the contract but the surety had no knowledge of the arrangement, which is on its face material and constitutes a release of the surety.

This conclusion is amply supported by the law of Indiana. In Lutz v. Frick Co., 242 Ind. 599, 181 N.E.2d 14, 16 (1962), the court said:

"There can be no question but that it is the settled law that any binding change in the principal's contract to which the guarantor or surety does not consent will discharge the latter from liability. * * * "

To the same effect is Crouch & Son v. Parker, 188 Ind. 660, 125 N.E. 453, at 456, 7 A.L.R. 1598 (1919) where the court, said:

"It is a sound and well-settled principle of law that sureties are not to be made liable beyond their contract and any agreement with the creditor, which varies essentially the terms of the contract, without the assent of the surety, will discharge him from responsibility. * * * "

At page 456, the court cited Magee v. Manhattan Life Ins. Co., 92 U.S. 93, 23 L.Ed. 699 (1875).

In Hartford Accident & Indemnity Co. v. State ex rel. Martin, 94 Ind.App. 531, 159 N.E. 21 (1927), the principal defaulted on a bonded contract. The contract contained an express agreement to pay for material and labor. The bond contained the standard defeasance clause. The obligee, suing for the benefit of laborers and materialmen, recovered against the surety. The surety defended on the ground *inter alia* that there had been a material change in the contract by substituting iron and steel pipe for vitrified shale tile without its con-

sent. At 25, the court quoted its earlier decision in Weir Plow Co. v. Walmsley, 110 Ind. 242, 11 N.E. 232, as follows:

> "Nothing * * * can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient, that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal."

In so holding the court in Weir Plow was quoting from Miller v. Stewart, 22 U.S. 680, 702, 6 L.Ed. 189.

In Fassnacht v. Emsing Gagen Co., 18 Ind.App. 80, 46 N.E. 45 (1897), a surety who had guaranteed payment of a note defended a suit thereon. She prevailed because the court held that when she signed as surety she believed the note was to pay for goods purchased by her son, but in fact a portion thereof was to pay a pre-existing indebtedness and the failure to inform her thereof would be cause to release her.

The rule thus announced gives no authority to the obligee or Meyer, or in fact to the court, to justify a departure from the surety's obligation, such as was attempted in this case. In other words, facts which have operated to release the surety cannot be erased and its liability reinstated by an ex post facto attempt by the court without the consent of the surety.

In the case at bar Chrysler must have known that anyone writing the bond as surety would believe that the terms of the payment were 90% cash in progress payments and 10% cash at the completion. Since Chrysler did not make those payments, its failure released the surety. Instead Chrysler placed the written subcontract in Meyer's hands and thus rep-

resented that the method of payment was one materially different from that actually agreed upon. Undoubtedly Chrysler thus gave Meyer an opportunity to secure a bond which he could not otherwise have secured.

Thus the district court, in view of these undisputed facts, had no alternative under the law of Indiana but to enter a judgment for the surety. I would reverse for that reason.